## BEAVER et al. v. SHORT, Atty. Gen. of Oklahoma, et al.

(District Court, E. D. Oklahoma.    July 19, 1924.)

No. 3003.

*(Syllabus by the Court.)*

**1. Indians ⊜2—Congress vested with exclusive power to legislate with reference to their restricted property.**

Congress has the exclusive power to legislate with reference to the various Indian tribes as a dependent people concerning their restricted property, or property held in trust by the United States for their use and benefit, and the fact that federal citizenship has been conferred upon such Indians in no way militates against this power.

**2. Indians ⊜2—Properties of restricted Indians not subject to state laws until restrictions removed.**

The properties of restricted Indians do not become subject to the operation of the laws of the state until all restrictions on the right of alienation have been removed by the Congress.

**3. Taxation ⊜864—Estate of restricted Indian not subject to state inheritance tax laws.**

The estate of a restricted deceased Quapaw Indian, held in trust by the United States for the heirs, cannot be subjected to the payment of an inheritance tax, as provided by the laws of the state of Oklahoma.

*(Additional Syllabus by Editorial Staff.)*

**4. States ⊜89—State has exclusive power over disposition of property.**

A state has sole exclusive power over disposition of property under its jurisdiction.

In Equity.    Action by John Beaver and Benjamin Quapaw against George F. Short, Attorney General, and C. C. Childers, State Auditor, of the State of Oklahoma, for an injunction to restrain the collection and enforcement of an inheritance tax against plaintiffs by reason of their inheritance of the estate of one See-Sah Quapaw, a portion of which is a restricted Quapaw Indian allotment located in Ottawa county, Oklahoma.    Decree for plaintiffs.

Joseph W. Howell, of Tulsa, Okl., for plaintiffs.

George F. Short, Atty. Gen., and C. W. King and Leon S. Hirsh, Asst. Attys. Gen., for defendants.

KENNAMER, District Judge.    See-Sah Quapaw, a full-blood restricted Quapaw Indian, died intestate on March 4, 1920, leaving as her only heirs John Beaver and Benjamin Quapaw, full-blood Quapaw Indians, husband and brother, respectively, of the deceased.    The estate inherited by said heirs consisted of the allotment of the deceased, patented on or about September 26, 1896, by virtue of the Act of Congress of March 2, 1895 (28 Stat. 907, c. 188) the same being inalienable for a period of 25 years from and after the date of patent.    By virtue of the provisions of the Act of Congress of June 25, 1910 (36 Stat. 855), and other supplemental statutes, the Secretary of the Interior determined the heirs of See-Sah Quapaw in accordance with the laws of de-

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

scent and distribution of the state of Oklahoma, and the superintendent of the Quapaw Indian Agency, as administrator, now holds the lands in trust for the benefit of these heirs, and about $11,000 accumulated royalties from said restricted lands.

[3] Counsel for the respective parties have stipulated that the bill filed by the plaintiffs correctly states the facts, and that the sole question to be determined in this action is whether the estate inherited by the plaintiffs from See-Sah Quapaw is subject to the inheritance tax provided by section 9891, Compiled Oklahoma Statutes 1921 (Act March 15, 1915, comprising chapter 162 of the Session Laws of 1915, as amended by Act March 25, 1919, chapter 296 of the Session Laws of 1919 of Oklahoma), wherein:

"A tax is hereby laid upon the transfer to persons or corporations of property or any interest therein or income therefrom:

"When the transfer is * * * by will or the intestate laws of this state, * * * by deed, grant, bargain, sale or gifts, made in contemplation of the death of the grantor," etc.

Section 9898 of said Code provides that:

"Every such tax shall be and remain a lien upon the property transferred until paid."

The Attorney General, on behalf of the state, contends that the plaintiffs, although restricted Quapaw Indians, being citizens of the United States and of the state of Oklahoma, and the Congress, by Act April 28, 1904 (33 Stat. 573, c. 1824), having extended the laws of descent of the state of Arkansas over the Indian Territory and made them applicable in their operation, so as to embrace all persons and estates, "whether Indian, freedman or otherwise," and said laws having been superseded under the provisions of the Enabling Act (Act of Congress of June 16, 1906, 34 Stat. 267, c. 3335), extending the laws of the territory of Oklahoma in force, that the devolution of the estate of See-Sah Quapaw is controlled by the laws of descent and distribution of the state of Oklahoma, and that before said heirs of said deceased may succeed to said estate by virtue of said laws the inheritance tax provided by the laws of Oklahoma must be paid.

[4] It is argued that on the admission of Oklahoma as a state all federal laws of descent and distribution theretofore in force in Indian Territory, irrespective of the provisions of the Enabling Act, terminated, and that the state has the sole and exclusive power over the disposition of property under its jurisdiction. "The title and modes of disposition of real property within the state, whether inter vivos or testamentary, are not matters placed under the control of federal authority." See U. S. v. Fox, 94 U. S. 315, 24 L. Ed. 192. The rule is well established that the state has sole and exclusive power over the disposition of property under its jurisdiction. McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300; Schley v. Car Co., 120 U. S. 580, 7 Sup. Ct. 730, 30 L. Ed. 789; United States v. Perkins, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287; Snyder v. Bettman, 190 U. S. 249, 23 Sup. Ct. 803, 47 L. Ed. 1035; Wilcox v. Jackson, 13 Pet. 498, 10 L. Ed. 264; Langdon v. Sherwood, 124 U. S. 74, 8 Sup. Ct. 429, 31 L. Ed. 344; O'Callaghan v. O'Brien, 199 U. S. 99, 25 Sup. Ct. 727,

50 L. Ed. 101; Ellis v. Davis, 109 U. S. 485, 3 Sup. Ct. 327, 27 L. Ed. 1006; Knowlton v. Moore, 178 U. S. 43, 20 Sup. Ct. 747, 44 L. Ed. 970; Plummer v. Cole, 178 U. S. 115, 20 Sup. Ct. 829, 44 L. Ed. 998.

[1] But this rule does not authorize or support the power of the state to impose and collect an inheritance tax upon the inheritable property of restricted Indians, over which the Congress has exclusive jurisdiction. The exclusive power of Congress to legislate with reference to the various Indian tribes as a dependent people and concerning their property is no longer a debatable question, and the conferring of federal citizenship upon such Indians in no way militates against this power. In the case of United States v. Thurston County, Nebraska, et al., 143 Fed. 287, 74 C. C. A. 425, Judge Sanborn in delivering the opinion of the court said:

"Their civil and political status, however, does not condition the power, authority, or duty of the United States to exert its powers of government to control their property, to protect them in their rights, to faithfully discharge its legal and moral obligations to them, and to execute every trust with which it is charged for their benefit. Matter of Heff, 197 U. S. 488, 509, 25 Sup. Ct. 506, 49 L. Ed. 848; Buster v. Wright, 68 C. C. A. 505, 135, Fed. 947; Wallace v. Adams (C. C. A.) 143 Fed. 716, decided at this term. They are still members of their tribes and of an inferior and dependent race, of which the Supreme Court has said that 'from their very weakness and helplessness, so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the executive and by Congress, and by this court, whenever the question has arisen.' U. S. v. Kagama, 118 U. S. 375, 384, 6 Sup. Ct. 1109, 30 L. Ed. 228. The experience of more than a century has demonstrated the fact that the unrestrained greed, rapacity, cunning, and perfidy of members of the superior race in their dealings with the Indians unavoidably drive them to poverty, despair, and war. To protect them from want and despair, and the superior race from the inevitable attacks which these evils produce, to lead them to abandon their nomadic habits and to learn the arts of civilized life, the government of the United States has long exercised the power granted to it by the Constitution (article 1, § 8, subd. 3) to reserve and hold in trust for them large tracts of land and large sums of money derived from the release of their rights of occupancy of the lands of the continent, to manage and control their property, to furnish them with agricultural implements, houses, barns, and other permanent improvements upon their lands, domestic animals, means of subsistence, and small amounts of money, and to provide them with physicians, farmers, schools, and teachers."

In the case of Marchie Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, the court said:

"From the earliest period Congess has dealt with Indians as dependent people and legislated concerning their property with a view to their protection as such. Congress has full power to legislate concerning tribal property of Indians, and the conferring of citizenship on individual Indians does not prevent Congress from continuing to deal with tribal lands. It is for Congress, in pursuance of long-established policy of this government, and not for the courts, to determine for itself when, in the interest of the Indian, government guardianship over him shall cease. The privileges and immunities of federal citizenship do not prevent such proper governmental restraint upon the conduct or property of citizens as may be necessary for the general good."

In the recent case of Sperry Oil & Gas Co. v. Chisholm, 44 Sup. Ct. 372, 68 L. Ed. ——, the court held that the provisions of the Okla-

homa Constitution, and applicable state statutes providing the manner of incumbering of homesteads within the state, had no application to restricted Indian lands. The Supreme Court of Oklahoma has held in numerous cases that restricted Indian lands are under the exclusive control and jurisdiction of the Congress of the United States. Molone v. Wamsley, 80 Okl. 181, 195 Pac. 484; Smith v. Williams, 78 Okl. 297, 190 Pac. 555; Walker v. Brown, 43 Okl. 144, 141· Pac. 681; Wilson v. Greer, 50 Okl. 387, 151 Pac. 629.

In the instant case, the Congress having provided that the heirs of Sce-Sah Quapaw were entitled to take the property of the deceased subject to the laws of descent and distribution of the state of Oklahoma, it is beyond the power of the Legislature of the state to impose any burden or conditions upon the right of said heirs to succeed to said estate, or to in any way burden the right of said heirs to inherit said property in contravention of the paramount federal law. Blanset v. Cardin, 256 U. S. 319, 41 Sup. Ct. 519, 65 L. Ed. 950.

[2] Restricted Indian lands do not become subject to the operation of the laws of the state until all restrictions from the right of the allottee to alienate have been removed and relinquished by the Congress. Sperry Oil & Gas Co. v. Chisholm, supra; In re Pigeon's Estate, 81 Okl. 180, 198 Pac. 309. The plaintiffs in this action being restricted Quapaw Indians, and the estate inherited by them from Sce-Sah Quapaw being held in trust for them by the government, is not subject to the inheritance tax law of the state of Oklahoma, and the injunction as prayed for by the plaintiffs is granted.