The first question to be determined in this case is whether Juanita Wilson Smith, the surviving wife of Robert Smith, deceased, a full-blood restricted Osage Indian allottee, is of Indian blood and entitled to inherit a portion of his estate as one of his heirs at law. Juanita Wilson Smith and Robert Smith were married on the 11th day of July, 1932, subsequent to the passage of the Act of Congress of February 27, 1925, 43 Stat. at L. 1008 (25 U.S.C.A. 331), section 7 of which prohibits inheritance by persons not of Indian blood from those of one-half or more Indian blood of the Osage Tribe, except spouses of then existing marriages.
The case originated in the county court of Osage county, which decided as a matter of fact that the surviving wife was a white woman and not of Indian blood, and therefore not entitled to inherit. The case was appealed to the district court of Osage county, and the same conclusion was reached by that court.
On appeal to this court plaintiff in error (Juanita Wilson Smith) first complains that:
"The evidence does not justify the finding that Juanita Wilson Smith is not of Indian blood and not entitled to share in this estate as an heir at law."
In determining the merits of this finding a review and analysis of the evidence produced by the parties has been made. The record is voluminous, and we shall therefore only epitomize a portion of the important features.
Juanita Wilson Smith claims to be of Indian blood of the Cherokee Tribe. She attributes her Indian blood to her paternal ancestors, claiming that her great grandfather, Bartholomew Guinn, commonly known as "Bat" Guinn, was of Cherokee Indian blood. The oral evidence on the part of plaintiff in error is that Bat was reputed to be of Indian blood and that he claimed Indian blood, and that there was a family history or tradition of Indian blood.
On the part of defendants in error, who are brothers and sisters of the deceased, Robert Smith, the evidence is that Bat was a white man, reputed to be such, and that his brother, Asa, and his sister, Nancy, were white, and that there was no tradition or history of Indian blood in the Guinn family, and that Bat did not claim Indian blood when he first came to the Cherokee Nation. Other testimony was offered by defendants in error to the effect that none of the Guinn family were ever enrolled as Cherokee Indians, and that on several different occasions various members of the Guinn family, including Bat, attempted to be placed on the Cherokee rolls for the purpose of obtaining the benefits following such enrollment, and that those attempts always failed with the exception that an order was made in 1871 by Judge Vann, who was then Chief *Page 160 
Justice of the Supreme Court of the Cherokee Nation, certifying that Neurana Mitchell, who was a sister of Bat, was of Cherokee blood. Years thereafter, this certificate and order was found and held to be fraudulent and revoked by a United States court. Considerable evidence was offered by plaintiff in error to explain the denial of such enrollment to the Guinns who had applied for enrollment, and to explain that the revocation of the certificate to Neurana Mitchell was made upon technical and jurisdictional grounds and not by reason that she was not of Cherokee Indian blood.
Members of the Guinn family testified for both parties relative to statements of other kinsfolk of the Guinns pertaining to the statements made by various members of the Guinn family as to whether the members of the family claimed to be of Indian descent and as to tradition of Indian blood in the family. This testimony is in conflict. The testimony of these witnesses as to the looks and habits of the Guinn family as to Indian characteristics is also in conflict.
Other testimony was offered by persons who had for many years lived in that part of Tennessee where a part of the Guinn family had lived before moving to the Indian Territory. A part of this testimony is to the effect that certain members of the Guinn family continued to live in Tennessee and own land in said state after 1835, when the treaty between the government and the Indians to remove all of the Cherokees from Tennessee, Georgia, and North Carolina to the Indian Territory was made, and that the last part of the Cherokees was moved out of those states by the United States Army in 1839, under the provisions of the treaty of 1835. That Almon Guinn, father of Bat, was permitted to remain in Tennessee, and in 1840, when the land in the Ocoee district was opened exclusively to white settlers, Almon and his brother Joshua were permitted to file and enter. Other testimony, however, was to the effect that if an Indian was less than a half-blood, he could remain and take land.
The evidence is in conflict as to whether the Guinns were considered as being of Indian blood, and as to whether they had the reputation of being Indians.
We have not attempted to review or analyze in this opinion the entire evidence as reflected by the record. However, we have read and studied the record, together with the well-prepared briefs presented by the attorneys. From our examination of the entire record, we are impelled to conclude that the finding of the trial court that Juanita Wilson Smith is not possessed of Indian blood is not against the clear weight of the evidence. On this question we approve the finding of the trial court. In re Noel's Heirship, 156 Okla. 177,10 P.2d 259; In re Miller's Estate, 182 Okla. 534, 78 P.2d 819; Thompson v. Thompson, 177 Okla. 437, 60 P.2d 615; In re Hamm's Estate, 186 Okla. 610, 99 P.2d 895.
Had it been satisfactorily proven that plaintiff in error was of Indian blood, regardless of the quantum thereof, she would have been permitted, under the law, to recover in this case, assuming this was the only question involved. In re Martin's Estate, 183 Okla. 177, 80 P.2d 561; In re Hamm's Estate, supra. This would be equally true even though plaintiff in error were of Cherokee Indian blood and not of Osage Indian blood. In re Thompson's Estate, 179 Okla. 240, 65 P.2d 442; In re Hamm's Estate, supra.
It is next contended by plaintiff in error that the Act of Congress of February 27, 1925, supra, is unconstitutional in that it is repugnant to the Fifth Amendment to the Constitution of the United States.
In connection with this contention reliance is placed upon the Fifth Amendment to the Constitution of the United States, which in common with *Page 161 
the other nine of the first ten amendments to that Constitution constitute the Bill of Rights, and in common with the other provisions of the first ten amendments (or according to some authorities, the first eight amendments) comprehend limitations upon the powers of the Federal Government as distinguished from the governments of the several states. 11 Am. Jur. 1095, par. 310.
However, as counsel for the plaintiff in error point out, there is an analogy between the provisions of the Fifth Amendment and the Fourteenth Amendment to the Federal Constitution which renders them comparable in many respects. The latter applies to and restricts the governmental authority of the several states and its requirements of "due process of law" and equal protection of the laws" as applied to the states find their express or implied counterpart in the Fifth Amendment, which applies with similar strictness and equal force to the government of the United States. Upon this similarity it is said in 11 Am. Jur. pg. 1097:
"It has been said that the limitations upon the power of the Federal Government, expressed in the Fifth Amendment, are to be read in connection with the similar limitations embodied in the Fourteenth Amendment, because the restrictions under these two amendments are in many respects similar."
(As to the implied "equal protection" requirements of the Fifth Amendment, see United States v. Yount, 267 F. 861, and authorities therein cited.)
Counsel assert that section 7 of the Act of February 27, 1925, contravenes these constitutional requirements by limiting the inheritance of restricted lands, moneys, or mineral interests of members of the Osage Tribe of one-half or more Indian blood to persons of Indian blood. It is thought that this discriminates against the white race or those members thereof who have no strain of Indian blood, and that this exclusion is a denial of "due process" and equal protection of the law. In support of this position a number of cases are cited dealing generally with the nature of the rights accorded and protected by the constitutional provision under consideration. United States v. Yount, supra; Sims v. Rives,84 F.2d 871; Leeper v. State of Texas, 139 U.S. 462, 35 L.Ed. 225; Giozza v. Tiernan, 148 U.S. 657, 37 L.Ed. 599; William Truax et al. v. Mike Raich, 239 U.S. 33, 60 L.Ed. 131.
A casual reading of the foregoing authorities lends color to the argument of counsel and the fallacy thereof is only apparent when, upon reflection, the nature of the thing affected by the legislation under consideration is accorded its full degree of consideration.
According to the majority view, the prospect of inheritance does not constitute a vested right (Hicks v. Jeffress,178 Okla. 109, 61 P.2d 1079; In re Frary's Estate, 186 Okla. 126,96 P.2d 526) and is not properly defined as property. The regulation thereof is peculiarly within the power of the sovereign state. While the power to determine who shall inherit may not be absolute and unlimited, it closely approaches that quality. 16 Am. Jur. pg. 778, et seq.; 6 R.C.L. 314; 9 R.C.L. 14; 11 Am. Jur. 1147.
It is undisputed in this case that the power of Congress reserved in connection with the regulation of the descent of restricted property of members of the Indian tribes is comparable to the power of states to legislate generally upon that subject. Thus, authorities dealing with the exercise of the power by the state and the relation thereof to the 14th Amendment of the Federal Constitution are by analogy in point upon the question now under consideration.
Particularly instructive upon this point is the discussion in Campbell v. California, 200 U.S. 87, 50 L.Ed. 382, at 387, wherein it was said:
"That is to say, in their last analysis all the arguments depend upon the *Page 162 
proposition that the 14th Amendment has taken away from the states their power to regulate the passage of property by death or the burdens which may be imposed resulting therefrom, because that amendment confines the states absolutely, both as to the passage of such property and as to the burdens imposed thereon, to the rule of blood relationship. To state the proposition is to answer it. Its unsoundness is demonstrated by previous decisions of this court. Magoun v. Illinois Trust 
Sav. Bank, 170 U.S. 283, 42 L.Ed. 1037, 18 Sup. Ct. Rep. 594; Orient Ins. Co. v. Daggs, 172 U.S. 557, 562, 43 L.Ed. 552, 554, 19 Sup. Ct. Rep. 281."
And:
"With the motives of public policy which may induce a state to prefer near relatives by affinity to collateral relatives, we are not concerned, since the Fourteenth Amendment does not deprive a state of the power to regulate and burden the right to inherit, but at the most can only be held to restrain such an exercise of power as would exclude the conception of judgment and discretion, and which would be so obviously arbitrary and unreasonable as to be beyond the pale of governmental authority."
See, also, Maxwell v. Bugbee, 250 U.S. 525, 63 L.Ed. 1124.
Thus, if the Fourteenth Amendment with its "due process" and equal protection clause left intact (for all practical purposes) the power of the state in connection with the regulation of inheritance, it is obviously untenable to urge that the Fifth Amendment with its express "due process" clause and implied equal protection clause places a greater inhibition upon the comparable power of the Federal Government.
It is worthy of note that the law now before us is not an isolated example of a limitation of inheritance of restricted property to those possessing peculiar qualifications determined by Indian blood or tribal membership. In more instances such factors have by congressional flat been made controlling factors. (Notice Act of June 28, 1898, and examine in connection therewith, Campbell v. Wadsworth, 248 U.S. 169, 63 L.Ed. 192.) See, also, Condren v. Marlin, 113 Okla. 259,241 P. 826; and in connection therewith, Marlin v. Lewallen,276 U.S. 59, 72 L.Ed. 467. Likewise, notice Grayson v. Harris,267 U.S. 352, 69 L.Ed. 652; and Cowokochee v. Chapman,90 Okla. 121, 215 P. 757.
Every legislative act which excludes a class of relatives from inheritance, either by specific inhibition or by preferring another class, is in a sense arbitrary. Usually, good reasons could be advanced that the law should be otherwise. And in this particular case it may well be, and is, urged that persons of no Indian blood should not be excluded, or that if they are to be excluded, those of Indian blood, not Osage, should also be excluded. This argument would be appropriate for legislative consideration, but it can not govern judicial judgment.
We cannot say that Congress acted in such an arbitrary and unreasonable manner as to place its action "beyond the pale of governmental authority."
Upon consideration of the foregoing authorities, we conclude that the congressional legislation now before us does not contravene the inhibitions contained in the Fifth Amendment to the Constitution of the United States.
It is also contended by plaintiff in error that even if the Act of February 27, 1925, supra, is constitutional, it should be construed with our Oklahoma Statutes on Homestead and Wills, and that it should be held it was the intention of Congress to exclude the surviving spouse from its application.
The above act was considered in the case of In re Martin's Estate, 183 Okla. 177, 80 P.2d 561. There it was held that there was nothing contained in the act that would cast a cloud upon the intent of Congress, and this court refused to go outside the same for information in aid of its interpretation, and held that the language of the act clearly expressed an intent to deny inheritance to heirs not of Indian blood, except *Page 163 
spouses of prior marriages. The same reasoning is applicable to the fact situation here presented.
Other incidental questions presented by the parties have, pending the determination of this case, been set at rest by our decision in Re Hamm's Estate, supra. Our decision therein will not be reiterated here.
The judgment of the trial court is affirmed.
BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, and HURST, JJ., concur. RILEY, CORN, and DANNER, JJ., absent.