MASHUNKASHEY v. MASHUNKASHEY et al.

No. 30126. Sept. 29, 1942.

Rehearing Denied Nov. 24, 1942.

*134 P. 2d. 976.*

N. E. McNeill and S. R. Lewis, both of Tulsa, for plaintiff in error.

Ralph A. Barney and John L. Arrington, both of Pawhuska, and Phil W. Davis, of Tulsa, for defendants in error.

OSBORN, J. This is an appeal from a decree of the district court of Tulsa county determining the heirs of Charles Mashunkashey, a deceased Osage Indian. The appellant is Margaret Mashunkashey, surviving wife of the deceased, who will be referred to as defendant.

The proceeding originated in the county court. Ben Mashunkashey, a half brother of the deceased, filed a petition in the administration proceedings to determine the heirs of deceased alleging that he was the sole heir. Responses were filed by Pah-pu-son-tsa, grandmother of deceased, and James E. Blaine, Jr., in which they claimed the right to inherit a portion of the property for reasons not necessary to mention here. The sole issue herein presented is whether or not Margaret Mashunkashey, the surviving wife of the deceased, is an heir to his estate or any portion thereof. The county court held that she was an heir to said estate and an appeal was perfected to the district court. The district court held that although Margaret Mashunkashey was the surviving wife of decedent, she was not of Indian blood, and therefore specifically prohibited from inheriting any portion of the estate by the provisions of section 7 of the Act of Congress of February 27, 1925 (43 Stat. 1011, 25 U. S. C. A., section 331, note).

In this connection, it is not contended that there is any money or property belonging to said estate except "restricted lands, moneys and mineral interests," as used in said act, if same is applicable.

Charles Mashunkashey was a member, of the Osage Tribe of Indians of the full blood. He died on June 10, 1934, possessed of considerable real and personal property including approximately 3 2/3rds headrights. Defendant and decedent were married by ceremonial marriage under license issued December 6, 1931, and lived together as husband and wife until the date of decedent's death. Decedent left no issue, no father, no mother, no full brother or sister, and no issue of any deceased brother or sister, but left a half brother, Ben Mashunkashey, plaintiff herein.

Section 7 of the Act of Congress of February 27, 1925, is as follows:

"Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title or interest to any restricted lands, moneys or mineral interests of the Osage Tribe: Provided, That this section shall not apply to spouses under existing marriages."

Defendant, Margaret Mashunkashey, contends that the above-quoted provision is invalid and ineffective in that the Congress, in attempting to provide for the distribution of, and the right to succession to, the estate of deceased persons, has exceeded its legislative powers. We will epitomize defendant's argument in support of this proposition, as follows:

The powers not delegated to the United States by the Constitution nor prohibited by it to the states are reserved to the states respectively, or to the people. Tenth Amendment, U. S. Constitution. The tenure, transfer, control, and disposition of real property are matters which rest exclusively with the state where the property lies. Sunderland v. United States, 266 U. S. 226, 45 S. Ct. 64, 69 L. Ed. 259; United States v. Fox, 94 U. S. 315, 24 L. Ed. 192; Tiger v. Slinker, 4 Fed. 2d 714, and authorities cited; Beaver v. Short, 300 Fed. 113, and authorities cited. The distribution of, and the right of succession to, the estates of deceased persons are matters exclusively of state cognizance.

Cope v. Cope, 137 U. S. 682, 11 S. Ct. 222, 33 L. Ed. 832. The title and methods of disposition of real property within the state, whether inter vivos or testamentary, are not matters placed under the control of federal authorities. United States v. Fox, supra; Beaver v. Short, supra. The title to land can be acquired and lost only in the manner prescribed by the law of the place where such land is situated. United States v. Crosby, 7 Cranch, 115, 3 L. Ed. 287.

Plaintiffs urge that these principles are not applicable here in that the legislation involved is within a field of legislation specifically reserved to the Congress, that is, legislation with respect to the Indians, their lands and property.

Under section 8, art. 1 of the Federal Constitution, the federal government was given the power "to regulate commerce with foreign nations, among the several states, and with the Indian Tribes."

Section 1 of the Enabling Act (34 Stat. 267) provides:

"That the Inhabitants of all that part of the area of the United States now constituting the Territory of Oklahoma and the Indian Territory, as at present described, may adopt a Constitution and become the State of Oklahoma, as hereinafter provided: Provided, that nothing contained in the said Constitution shall be construed to limit or impair the rights of persons or property pertaining to the Indians of said Territories (so long as such rights shall remain unextinguished) or to limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property or other rights by treaties, agreement, law or otherwise, which it would have been competent to make if this Act had never been passed."

Section 3 of said act in part provides:

"That the people inhabiting said proposed state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe, or nation; and that until the title to any

such public land shall have been extinguished by the United States the same shall be and remain subject to the jurisdiction, disposal and control of the United States."

In section 3, art. 1, of the Constitution it was provided that:

"The people inhabiting the state do agree and declare that they forever disclaim all right and title in or to any unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian, tribe or nation:"

The above-quoted provisions have been construed many times by this court. In the recent case of Neal v. Travelers Ins. Co., 188 Okla. 131, 106 P. 2d 811, 817, we said:

"In view of the above-quoted provisions of the Enabling Act and the acceptance thereof by the Constitutional Convention, the power to regulate and legislate with regard to the Indian citizens of Oklahoma was, by consent of the state, expressly reserved to Congress."

In the case of Scioto Oil Co. v. O'Hern, 67 Okla. 106, 169 P. 483, it was said:

"These provisions in the Enabling Act were effectual to preserve the authority of the government of the United States over the Indians, their lands, property, or other rights which it had prior to the passage of the act, and the government retained and yet retains the right to control the same which it had prior to the admission of the state, except where that right has been relinquished by Congress. Brader v. James, 49 Okla. 734, 154 P. 560. And the legislation of Congress respecting subjects within its jurisdiction derives no force from any agreement or compact with the proposed new state nor by reason of its acceptance of such enactment as one of the terms of its admission, but is effectual solely because the power of Congress extended to the subject, and such legislation was lawfully within congressional authority. Coyle v. Smith, 221 U. S. 559, 31 S. Ct. 688, 55 L. Ed. 853; Ex parte Webb, 225 U. S. 663, 32 S. Ct. 769, 56 L. Ed. 1248. . . . .

"It is well settled that the state has no control over those matters which are within the exclusive sphere of federal

jurisdiction, and when said laws conflict with any law of Congress upon the subject, the state law is superseded. Western Union Tel. Co. v. Bank of Spencer, 53 Okla. 398, 156 P. 1175."

In the case of Brader v. James, 49 Okla. 734, 154 P. 560, it was said:

"In considering this subject we must remember that the Congress of the United States has undertaken from the earliest history of the government to deal with the Indians as a dependent people, and to legislate concerning their property with a view to their protection as such dependents. Cherokee Nation v. Georgia, 5 Pet. 1, 17, 8 L. Ed. 25, 31; Stephens v. Cherokee Nation, 174 U. S. 445, 484, 19 S. Ct. 722, 43 L. Ed. 1041, 1055; United States v. Kagama, 118 U. S. 375, 6 S. Ct. 1109, 30 L. Ed. 228; Lone Wolf v. Hitchcock, 187 U. S. 565, 23 S. Ct. 216, 47 L. Ed. 306. And we may say, further, that the power of the general government to deal with, control, and protect the property of Indians, where not expressly abandoned, may not fairly be open to controversy. Arising originally out of the necessities of the situation, it now has the support of immemorial legislative and executive usage, and likewise that of judicial sanction, as evidenced in a long line of decisions of the Supreme Court. This power remains in full force and vigor until its further exercise is deemed unnecessary by those in whom it rests. Worcester v. Georgia, 6 Pet. 515, 8 L. Ed. 483; United States v. Rickert, 188 U. S. 439, 23 S. Ct. 478, 47 L. Ed. 536; Wallace v. Adams, 204 U. S. 420, 27 S. Ct. 363, 51 L. Ed. 550, and cases last cited."

We also quote from Tiger v. Western Investment Co., 221 U. S. 286, 31 S. Ct. 578, 55 L. Ed. 738:

"The power of the general government over these remnants of a race once powerful, now weak and diminished in numbers, is necessary to their protection, as well as to the safety of those among whom they dwell. It must exist in that government, because it never has existed anywhere else; because the theatre of its exercise is within the geographical limits of the United States, because it has never been denied; and because it alone can enforce its laws on all the tribes. United States v. Kagama, 118 U. S. 375, 30 L. Ed. 228, 6 S. Ct. 1109.

"Plenary authority over the tribal relations of the Indians has been exercised by Congress from the beginning, and the power has always been deemed a political one, not subject to be controlled by the judicial department of the government. Lone Wolf v. Hitchcock, 187 U. S. 565, 47 L. Ed. 306, 23 S. Ct. 215."

In the case of William v. Johnson, 239 U. S. 414, 36 S. Ct. 150, 60 L. Ed. 358, it is said:

"It has often been decided that the Indians are wards of the nation, and that Congress has plenary control over tribal relations and property, and that this power continues after the Indians are made citizens, and may be exercised as to restrictions upon alienation."

The word "plenary" has often been employed by the courts to define the nature of the power and authority of the Congress to legislate with respect to the Indians. The word "plenary" is defined by Webster's New International Dictionary as follows: "Full; entire; complete; absolute; perfect; unqualified."

It does not appear that the exact question involved herein has ever been presented to this court. In the cases of In re Martin's Estate, 183 Okla. 177, 80 P. 2d 561, and In re Smith's Estate, 188 Okla. 158, 107 P. 2d 188, it was said that the power of Congress to control the devolution of estates of the character involved herein is unlimited, but it is pointed out by defendant that the *power* of Congress to provide for the disinheritance of one not possessed of Indian blood by providing for the devolution of property only to those possessing Indian blood was not questioned in either of those cases. In the case of In re Smith's Estate, the constitutionality of section 7, supra, was challenged, but the sole argument presented therein was that it contravened the "due process" clause and "equal protection" clause of the state and federal Constitutions.

It further appears that congressional enactments limiting the right to inherit property to heirs of the tribal blood of

the decedent have received judicial sanction and approval. McDougal v. McKay, 237 U. S. 372, 35 S. Ct. 605, 59 L. Ed. 1001; Campbell v. Wadsworth, 248 U. S. 169, 39 S. Ct. 63, 63 L. Ed. 192; Scott v. Ryal, 78 Okla. 12, 186 P. 206; Marlin v. Lewallen, 276 U. S. 58, 48 S. Ct. 248, 72 L. Ed. 467; Grayson v. Harris, 267 U. S. 352, 45 S. Ct. 317, 69 L. Ed. 652; Cowokochee v. Chapman, 90 Okla. 121, 215 P. 759; Grease v. McNac, 102 Okla. 44, 225 P. 524; Coker v. Howard, 122 Okla. 12, 250 P. 130.

. The determinative question presented here is whether or not the subject matter of section 7, supra, is within the exclusive sphere of federal jurisdiction. We have referred to state and federal authorities outlining the policy and purpose of the law with respect to the lands and property of the Indians. None of these authorities discloses an inclination to limit in any degree the broad and comprehensive powers reserved to the federal government by the all-inclusive language of section 1 of the Enabling Act. Specifically, the power reserved was the power to make any law or regulation which it would have been competent to make "if this act had never been passed." Prior to statehood, the power of Congress to legislate with respect to the Indians, their lands and property, was plenary. This plenary power was fully preserved to the Congress by the provisions of the Enabling Act and the acceptance of said provisions by the people of this state, It inevitably follows that the right to control the devolution of such property remained within the exclusive sphere of federal jurisdiction, and the state statutes providing for succession of property are superseded insofar as such property is concerned. Scioto Oil Co. v. O'Hern, supra. The Congress did not exceed its powers in the enactment of section 7, supra.

It is next contended that section 7 of the Act of February 27, 1925, is to be construed to apply only to the tribal property of the Osage Tribe and should not be given application to the individual property of the members of the tribe. This question was before the court in the case of In re Martin's Estate, 183 Okla. 177, 80 P. 2d 561, wherein it was said:

"In referring to the 'lands, moneys, or mineral interests of the Osage Tribe,' Congress could have meant nothing other than the vested interest of the individual members thereof, which interest included his allotted lands and moneys and his vested, though undivided, interest in the minerals and other property commonly referred to as lands and mineral interests of the Osage Tribe. Congress was dealing with individual estates, for there was no other property to deal with. It merely referred to such individuals collectively as the Osage Tribe."

Defendant further contends that the finding of the trial court that she was not of Indian blood is against the clear weight of the evidence. Defendant is the daughter of Nick Eaton, whose father was John Stephen Eaton. In the county court defendant took the position that the mother of John Stephen Eaton was one Nancy Langley, who was a Cherokee Indian of the half blood. Upon this assumption of fact, the county court concluded that the defendant, Margaret Mashunkashey, was possessed of Indian blood. When the cause was tried before the district court, evidence was introduced from which the court found that the mother of John Stephen Eaton was not Nancy Langley, but was one Nancy Gow, who possessed no Indian blood. Defendant introduced some evidence before the district court for the purpose of showing that there was Indian blood in the generation which preceded Nancy Gow and Elijah Eaton, the parents of John Stephen Eaton, but the court found that there was no evidence of Indian blood prior to the generation represented by the parents of John Stephen Eaton. It further appears that John Stephen Eaton made numerous efforts to have his name placed upon the roll of the Cherokee Tribe of Indians to procure an allotment but was not successful. Other witnesses testified to acquaintance with John Stephen Eaton, his parents and his brothers, for a num-

ber of years, and testified that during the period of said acquaintance none of them had been heard to claim Indian blood. The evidence is conflicting, but the finding of the trial court is not against the clear weight of the evidence.

We conclude that defendant's rights are determinable by the provisions of section 7, supra, which provision is valid and supersedes the state law insofar as the estate involved herein is concerned. Having reached this conclusion, it becomes unnecessary to consider other assignments of error presented in the briefs.

The judgment is affirmed.

WELCH, C. J., and BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V. C. J., and RILEY, J., absent.