Olivia Rose GILLILAND, Nancy Leona Gilliland Reber, Freda Helen Gilliland Moore, George Chester Gilliland, Naomi Wolfe Myers, and Virginia Rose Wolfe, Plaintiffs in Error,

v.

Nancy STRIKEAXE, Donald George Strikeaxe, William Alexander Eads and Paul A. Comstrock, Defendants in Error.

No. 39072.

Supreme Court of Oklahoma.

Nov. 7, 1961.

Wm. S. Hamilton, L. M. Colville, Pawhuska, Paul W. Brightmire, Tulsa, Gene Lary, Dallas Tex., for plaintiffs in error.

Gray & Palmer, by Charles R. Gray, Paul A. Comstock, Pawhuska, Houston,

Klein & Davidson, by Gerald B. Klein and Garland Keeling, Tulsa, for defendants in error.

**JOHNSON, Justice.**

Kenneth Strikeaxe, a full-blood Osage Indian, died testate leaving a will dated December 14, 1953, whereby he attempted to leave a substantial portion of his estate to nonrelatives, thus depriving his wife and adopted child of such property. It is undisputed that all of the estate of deceased was restricted Osage Indian property owned by him and subject to being willed. This December will contained in the first paragraph thereof the phrase "hereby revoking and cancelling all other former wills by me at any time made." This will was properly executed and witnessed in accordance with the laws of the State of Oklahoma but was not approved by the Secretary of the Interior as required by Section 8 of the Osage Act of April 18, 1912, 37 U.S.Stat.L. 86.

On April 9, 1953, the testator had made a previous will which left the bulk of his estate to his wife and adopted son. This will was duly executed and approved by the Secretary of the Interior in accordance with Section 8 of the Osage Act of April 18, 1912, 37 U.S.Stat.L. 86.

Kenneth Strikeaxe was a full-blood Osage Indian without a certificate of competency.

Under the Federal law, if he died intestate, the right of inheritance is denied to all of his heirs who cannot prove they are of Indian blood. The testator's widow and adopted son could not so prove. If Strikeaxe died intestate, his property would pass to the plaintiffs in error. If his will of April 9, 1953 was valid, his property would pass to the defendants in error.

The sole issue in the case is this: The dispositive provisions of the December will are admittedly invalid, but it is contended that the revocation of previous wills therein contained is valid and therefore the will of April, 1953, was revoked and the deceased died intestate.

For a determination of this question we must first consider the Act of Congress concerning the making of wills by members of the Osage Tribe, 37 U.S.Stat.L. 86. The particular section of the Act applicable here reads:

"That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will, in accordance with the laws of the State of Oklahoma; Provided, That no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."

In the case of Chesnut v. Capey, 45 Okl. 754, 146 P. 589, 590, there were two questions involved. The first concerned a revocation of a former will made by a full-blood Choctaw Indian. This revocation was contained in a second will not conforming to the Act of Congress in either the dispository clauses or in being approved by the county judge.

The second question involved a revocation which was not contained in a purported second will and hence has no bearing on the question here.

In discussing the revocatory clause in the invalid will, this court said:

"The March and Woodruff will is like the Chesnut will, in that it disinherits the wife of the testator, but is unlike the Chesnut will, in that it contains a clause revoking all prior wills, and is not acknowledged before and approved by a judge of the county court, as required by the amendatory act of May 27, 1908, c. 199, 35 Stat. 312. In holding that this will revoked the Chesnut will, the court found that, although the same was not executed in form to satisfy the act of Congress, supra, and hence was not sufficient to disinherit the wife of the testator, yet,

being executed in form to satisfy the law of the state in force at that time, the same was sufficient to revoke the Chesnut will. Therein the court erred. Disinheriting his wife, as it did, said will was required to be executed in form to satisfy the act of Congress, as amended, and, as it did not, the same was defective and the revocatory clause of no effect. On this point this case is governed by Leard et al. v. Askew, 28 Okl. 300, 114 Pac. 251, Ann.Cas.1912D, 234, where in the syllabus we said: 'Though the subsequent will contains a clause expressly revoking the earlier will, yet, if such subsequent will is defectively executed, the revocatory clause will not take effect.' "

In the case of Leard et al. v. Askew, 28 Okl. 300, 114 P. 251, the syllabus by the court reads:

"Though the subsequent will contains a clause expressly revoking the earlier will, yet, if such subsequent will is defectively executed, the revocatory clause will not take effect."

While the opinion is short, many authorities from over the United States are cited in support of the rule announced. However, it is urged that these cases have been overruled and modified by subsequent opinions in the following cases: Phillips v. Smith, 186 Okl. 636, 100 P.2d 249 and Armstrong v. Letty, 85 Okl. 205, 209 P. 168. This contention necessitates an analysis of these cases.

The Armstrong case involved the will of a fullblood Chickasaw Indian wife. The Phillips case involved that of a Choctaw. Both of these were covered by the Act governing the Five Civilized Tribes. The pertinent part of this Act of April 26, 1906, 34 Stat. 137, par. 23, as amended by the Act of Congress of May 27, 1908, 35 Stat. 312, reads:

"Every person of lawful age and sound mind may by last will and testament devise and bequeath all of his estate, real and personal, and all interest therein: Provided, That no will

of a full-blood Indian devising real estate shall be valid, if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States Court for the Indian Territory, or a United States Commissioner, or a judge of a county court of the State of Oklahoma."

The Osage Act, as distinguished from the above, specifically invalidates the entire instrument when not approved as required by the Act of Congress.

In the case of Mashunkashey v. Mashunkashey, 191 Okl. 501, 134 P.2d 976, 979, this court held that in connection with the Osage Indians, Congress had "plenary" powers. The court then defined the word as follows:

"The word 'plenary' has often been employed by the courts to define the nature of the power and authority of the Congress to legislate with respect to the Indians. The word 'plenary' is defined by Webster's New International Dictionary as follows: 'Full; entire; complete; absolute; perfect; unqualified.' "

It is elementary that if Congress has such powers it may not only control the devolution of property of such Indians but also define what constitutes a will and the effect of an instrument not executed in conformity to the congressional act. As pointed out above, the provisions of the Osage Act are entirely different from those of the enactment governing the Five Civilized Tribes. The act under consideration deprives the Osage of the right to make a will disposing of restricted property unless approved by the Secretary of the Interior.

Because of these differences in the acts, we are convinced that the reasoning of the Chesnut and Leard cases is entirely applicable to the case at bar.

We are sustained in this view by the interpretations made by the Indian Department. This record discloses that in the consideration of this particular will the

department said in its communication of April 21, 1958:

"The disapproval of a will of an Osage Indian by the authorized representative of the Secretary of the Interior results in a disapproval of the entire instrument, including the revocation clause contained in the will, where the reasons for such disapproval extend to the entire instrument."

This was approved upon appeal from this ruling by the following in the Department opinion:

" * * * The will of December 14, 1953 was not approved, as required. Therefore, in the light of the statutory provision that such a will, lacking approval, cannot be admitted to probate or have any validity, it follows that when the Superintendent disapproved the will, the entire instrument, including the revocation clause, was invalid for all purposes. This is the only reasonable conclusion which can be derived from the circumstances in the present case where it has been determined that the reasons for the disapproval of the December 14, 1953 will extended to the whole instrument, including the revocation clause."

Executive rulings carry much weight in the interpretation of statutory provisions. Watson v. State Election Board, Okl., 302 P.2d 134, 138. In this case it was said:

"On the interpretation of statutes we find that in McCain v. State Election Board, 144 Okl. 85, 289 P. 759, 760, this Court announced in the third paragraph of the syllabus as follows:

" 'The construction which has been placed upon a statute by the officer or governmental department charged with the carrying out of the provisions of the law is to be accorded due consideration by the courts in construing the statute.'

"In Blanset v. Cardin, 8 Cir., 261 F. 309, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950, it was also announced that where the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution."

The defendants in error submit that the doctrine of "dependent relative revocation" is decisive of the case. In view of the conclusion which we have reached, we deem it unnecessary to consider this proposition.

This is a case of first impression as to the construction of the Osage Act, and we hold that under the provisions of said Act an unapproved will disposing only of restricted property is void and ineffective of any purpose, including the revocation of a prior valid will.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JACKSON, IRWIN and BERRY, JJ., concur.