Velma Rose **BIGHEART**, surviving spouse
of William Bigheart, Jr., Deceased, Un-
allotted Osage Indian, Appellant,

v.

**John PAPPAN, Superintendent of the
Osage Indian Agency, et al.,
Appellees,**

**Pearl Hall et al., Intervenor-
Appellees.**

No. 72-1718.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 10, 1973.

Decided Aug. 14, 1973.

Rehearing Denied Sept. 21, 1973.

Shockley T. Shoemake, of Shoemake
& Briggs, Pawhuska, Okl., for appellant.

Terrence L. O'Brien, Atty., Dept. of
Justice (Wallace H. Johnson, Asst. Atty.
Gen., Nathan G. Graham, U. S. Atty.,
Robert F. Santee, Asst. U. S. Atty., and
Carl Strass, Atty., Dept. of Justice, with
him on the brief), for appellees.

Bruce W. Gambill, of Kelly & Gambill,
Pawhuska, Okl., for intervenor-appellees.

Before SETH, BARRETT and
DOYLE, Circuit Judges.

SETH, Circuit Judge.

Appellant, Velma Rose Bigheart, ap-
peals from an order of the district court
approving the administrative determina-
tion of the Department of the Interior
that the 1967 will and codicil of William
Bigheart, Jr. were valid and effective.
William Bigheart, Jr. was a half blood
Osage Indian, and appellant is decedent's
widow. The decedent died on September
27, 1969, possessed of certain restricted
property, and left surviving the appel-
lant, two children by a former marriage,
and his mother.

Appellant and decedent were married
in 1965. Both had been married several

times previously and had known each other for some time. Decedent had a serious drinking problem and had been hospitalized many times. After their marriage, appellant and decedent moved to Oklahoma from South Dakota where they had been residing. ·Decedent owned a ranch in South Dakota on which his mother and her husband lived. Since decedent was an unallotted Osage, without a certificate of competence, all property of decedent was held in trust by the United States. Upon their arrival in Oklahoma, decedent contacted the Osage Indian Agency and requested that his South Dakota property be sold so that he might buy a house in Pawhuska, Oklahoma. There was evidence in the record that this was done. Decedent's medical problems continued, and shortly after his arrival in Pawhuska, decedent contacted his attorneys and drew a new will, cancelling his old will and the codicils thereto. This will was executed in 1965 and will hereinafter be termed the 1965 will. However, the record shows that decedent continued to drink heavily. There was evidence that appellant would not allow decedent to drink while at home. After the sale of the South Dakota ranch, decedent's mother and her husband came to live in Pawhuska. Sometime in the late spring or early summer of 1967, decedent went to live with his mother. On the 27th day of June, 1967, decedent executed a new will which completely omitted his wife, appellant herein. On the same day he filed for divorce. On July 7, 1967, on his way to have a gall bladder operation, decedent executed a codicil to the June 27th will, leaving $10.00 to appellant.

After his death, the Osage Indian Agency commenced Will Approval hearings in accordance with regulations of the Department of the Interior. Appellant contested the 1967 will and codicil thereto on the grounds that decedent did not have testamentary capacity in 1967 and that he was under the domination of his mother at that time. Decedent's 1965 will left his mother $100.00 a month for life payable from decedent's Osage headrights, with the remainder of his estate to be divided into thirds, one for his wife, appellant, and one for each of his two children. The 1967 will also left his mother $100.00 a month for her life, but provided that the remainder of his estate should be divided equally between his two children. The 1967 codicil left $10.00 to appellant and granted the additional sum of $2,500.00 to decedent's mother.

After extensive hearings on testamentary capacity, the Field Solicitor determined that the 1967 will and codicil should be approved, and that the 1965 will had been superseded and should not be approved. His recommendations were forwarded to the Superintendent of the Osage Agency and were adopted. Appellant made exhaustive administrative appeals which were all determined adversely to her. The 1967 will was then sent to be probated in the courts of Oklahoma. This suit was filed, and the probate proceedings were stayed pending the outcome of this action.

After an examination of the record of the administrative hearings, we are convinced that the trial court was correct in its determination that the decision of the Agency was supported by substantial evidence on the record as a whole. Appellant attempted to show that the 1965 will was proper, and that the 1967 will was executed under the influence of decedent's mother. However, it will be noted that the provisions for decedent's mother in the 1967 will and codicil thereto do not differ substantially from those in the 1965 will. The only substantial difference between the two wills was the inclusion of appellant in the former, and her almost total exclusion from the latter. In light of the fact that decedent had commenced divorce proceedings against appellant, we do not find that to be unusual. We also hold that there was substantial evidence on the record as a whole to support the determination that decedent had testamentary capacity when he executed the 1967 will and codicil and revoked the 1965 will.

Appellant also made the contention that she should be allowed to elect

against the will as permitted by 84 Okl. Stat.Ann. § 44, and take an intestate share under 84 Okl.Stat.Ann. § 213. However, section 7 of the Act of February 27, 1925, 43 Stat. 1008, seemingly prevents appellant from so doing. That section as amended September 1, 1950, provides as follows:

"Hereafter none but heirs of Indian blood shall inherit from those who are of one-half or more Indian blood of the Osage Tribe of Indians any right, title, or interest to any restricted lands, moneys, or mineral interests of the Osage Tribe; Provided, That (except in cases where a person claiming as such heir is a party to a judicial proceeding pending on the date of the enactment of this proviso in which the claimant has filed a formal pleading alleging Indian blood) no claim of heirship shall be recognized unless the claimant shall establish that he is a citizen of the United States and is enrolled on a membership, census, or other roll prepared under the direction of the Secretary of the Interior, or has a lineal Indian ancestor so enrolled. . . ."

■ Appellant alleges first, that this Act is unconstitutional, and secondly, that she has not been given notice and an opportunity to show that she is of Indian blood, and enrolled or the lineal descendant of someone enrolled on a tribal roll or census. On the first point, appellant sought to have the question determined by a three-judge panel. 28 U.S.C. § 2284.

The trial court determined, and properly so, that the constitutionality of section 7 of the Act of 1925, although not having been explicity ruled upon, had been upheld in other situations almost identical hereto, and that it was therefore not necessary to convene a three-judge court. That Congress can regulate as to inheritance of restricted Indian properties and that this classification, although based on race, is permissible, has been determined in many cases. See Simmons v. Eagle Seelatsee, D.C., 244 F.Supp. 808, aff'd 384 U.S. 209, 86 S.Ct. 1459, 16 L.Ed.2d 480; Blanset v.

Cardin, 256 U.S. 319, 41 S.Ct. 519, 65 L. Ed. 950; Ute Indian Tribe of Uintah & Ouray Reservation v. Probst, 428 F.2d 491, rehearing denied 428 F.2d 498 (10th Cir.); Groundhog v. Keller, 442 F.2d 674 (10th Cir.).

■ As for appellant's contention that she was not given notice and an opportunity to be heard on the question of whether or not she was of Indian blood and met the requirements of section 7 of the Act of February 27, 1925, we hold that appellant's counsel properly reserved that issue for presentation to the County Court of Osage County, Oklahoma, where the will had been filed for probate. It was the function of the Department of the Interior to approve or disapprove decedent's will. This having been done, appellant can properly seek to elect against the will under the provisions of Oklahoma law if she can meet the federal requirements of section 7. Oklahoma courts have consistently followed this procedure. See Ware v. Beach, 322 P.2d 635 (Okl.1957); Mashunkashey v. Mashunkashey, 191 Okl. 501, 134 P.2d 976 (1942); In re Smith's Estate, 188 Okl. 158, 107 P.2d 188 (1940); In re Martin's Estate, 183 Okl. 177, 80 P.2d 561 (1938); see also Tiger v. Timmons, 147 Okl. 141, 295 P. 614 (1931).

The cases cited by appellant in support of her position that she should be allowed to elect against the will and take an intestate share according to the laws of the state of Oklahoma regardless of whether she is of Indian blood do not support her position. In re Mo-se-che-he's Estate, 188 Okl. 228, 107 P.2d 999 (1940), although holding that the laws of the state of Oklahoma were applicable to the wills of Osage Indians, the court made the following statement, at 1004:

"Plaintiffs in error contend that Jack Rogers (Albert Fierro) is not a competent person to protest the will for the reason that he has not shown himself interested in the estate of Mo-se-che-he, and entitled to inherit in the absence of a will, in that he is a white person and not entitled to in-

herit as the surviving husband of a fullblood Osage Indian woman.

"That question is not before us at this time.

"Determination of heirship is for the County Court when the matter of final distribution comes on in regular course of administration. At that time Fierro may or may not be able to show his right to inherit. . . ."

Soderstrom v. Bonner, 180 Okl. 355, 71 P.2d 117 (1937), made no reference whatsoever to the Act of February 27, 1925, and finally, In re Revard's Estate, 178 Okl. 524, 63 P.2d 973 (1936), dealt with the will of a member of the Osage Tribe "of less than half-blood, to whom a certificate of competency had been issued." It is thus readily apparent that the Act of February 27, 1925, which by its terms is applicable only to the will of Osage Indians of one-half or more Indian blood, was not determinative of any of the issues in that case, and it was, in fact, never mentioned by the court.

We have reviewed appellant's other contentions of error, and find them to be without merit.

Affirmed.