## UNITED STATES v. YOUNT et al.

(District Court, W. D. Pennsylvania. October 21, 1920.)

No. 4773.

1. **Criminal law ⬌242(5)—In proceeding to remove defendants to another district, indictment only prima facie evidence of probable cause.**

In proceedings to remove a defendant to another district for trial, the indictment, while prima facie evidence of probable cause, is not conclusive, and the judge must, in the exercise of a judicial function, ascertain whether an offense is charged, whether there was probable cause, and whether the court to which removal is sought has jurisdiction of the offense.

2. **Constitutional law ⬌251—"Due process of law" protects against arbitrary action.**

"Due process of law," within Const. Amends. 5 and 14, is equivalent to the "law of the land," and is intended to protect the citizen against arbitrary action, and to secure to all persons equal and impartial justice.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Process of Law.]

3. **Constitutional law ⬌251—Due process of law includes equal protection of laws.**

The due process of law provision of Const. Amend. 5, is broad enough in scope and purpose to include the equal protection of the laws, which no state may deny to any person under Const. Amend. 14.

4. **Constitutional law ⬌253—Due process of law does not forbid classification.**

Due process of law, required by Const. Amends. 5 and 14, does not prohibit classification, especially by states under their police powers relating to the safety, health, and morals of the public, which were not surrendered to the federal government by the Fourteenth Amendment.

5. **Constitutional law ⬌253—Classification must be reasonable to conform to due process of law.**

A classification, to be valid under the due process of law clause, must bear a reasonable and just relation to the act in respect to which it is imposed, and can never be arbitrary, though much discretion is necessarily given to the law-making power.

6. **Constitutional law ⬌296(1)—Exemption of farmers from food control denial of due process.**

A provision of Lever Act Aug. 10, 1917, § 4, as amended by Act Oct. 22, 1919, excluding from the act associations of farmers, is an attempted classification without any reasonable basis, contrary to Const. Amend. 5.

Application by the United States for an order to remove George W. Yount and others to the Northern District of Illinois, Eastern Division, to answer a charge of conspiracy to violate the Lever Food Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛*l*–3115⅛r), as amended. Petition dismissed, and defendants discharged.

D. J. Driscoll, U. S. Atty., of St. Marys, Pa., and Daniel S. Horne, Asst. U. S. Atty., of Pittsburgh, Pa.

Thomas J. Hoffman, of Pittsburgh, Pa., for defendants.

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMSON, District Judge. This is an application by the United States attorney for an order to remove the defendants to the Northern district of Illinois, Eastern division, there to answer a charge of conspiracy preferred by indictment against the defendants and others. The defendants were arrested and brought before the United States commissioner of this district, and after hearing were committed, on their failure to give bail. Thereupon this application for removal was made to this court. The application is resisted strenuously by the defendants, each of them denying any complicity in the conspiracy charged; Mr. Taylor in addition offering evidence that he was never within the jurisdiction of the court where the conspiracy is charged to have been made, and was in no way a party thereto. It is also alleged by the defendants that the section of the act of Congress under which they are indicted is unconstitutional and void, and that therefore they should not be removed or held to answer the charge in the indictment.

[1] The Supreme Court has mapped out with clearness the procedure under section 1014 of the Revised Statutes (Comp. St. § 1674), where it is sought to remove a defendant from the district where arrested to that where the offense is triable. It is distinctly ruled that, while the indictment constitutes prima facie evidence of probable cause, it is not conclusive, and evidence may be offered by the defendant tending to show that no offense triable in the district to which removal is sought has been committed; that in such a proceeding the function of the judge is not ministerial, but judicial; that—

"he must look into the indictment, to ascertain whether an offense against the United States is charged, find whether there was probable cause, and determine whether the court to which the accused is sought to be removed has jurisdiction of the same. The liberty of the citizen, and his general right to be tried in a tribunal or forum of his domicile, imposes upon the judge the duty of considering and passing upon those questions.'" Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689; Beavers v. Henkel, 194 U. S. 73, 24 Sup. Ct. 605, 48 L. Ed. 882.

Keeping these principles in mind, we turn to the facts of the case. The defendants are indicted under section 4 of the Act of Congress known as the Lever Act, approved August 10, 1917, as amended by Act Oct. 22, 1919, c. 80, which reads as follows:

"Sec. 4. That it is hereby made unlawful for any person willfully to destroy any necessaries for the purpose of enhancing the price or restricting the supply thereof; knowingly to commit waste or willfully to permit preventable deterioration of any necessaries in or in connection with their production, manufacture, or distribution; to hoard, as defined in section 6 of this act, any necessaries; to monopolize or attempt to monopolize, either locally or generally, any necessaries; to engage in any discriminatory and unfair, or any deceptive or wasteful practice or device, or to make any unjust or unreasonable rate or charge in handling or dealing in or with any necessaries; to conspire, combine, agree, or arrange with any other person, (a) to limit the facilities for transporting, producing, harvesting, manufacturing, supplying, storing, or dealing in any necessaries; (b) to restrict the supply of any necessaries; (c) to restrict distribution of any necessaries; (d) to prevent, limit, or lessen the manufacture or production of any necessaries in order to enhance the price thereof; or (e) to exact excessive prices for any necessaries, or to aid or abet the doing of any act made unlawful by this section."

"Any person violating any of the provisions of this section, upon conviction thereof shall be fined not exceeding $5,000 or be imprisoned for not more than two years, or both: Provided, that this section shall not apply to any farmer, gardener, horticulturist, vineyardist, planter, ranchman, dairyman, stockman, or other agriculturist, with respect to the farm products produced or raised upon land owned, leased, or cultivated by him: Provided further, that nothing in this act shall be construed to forbid or make unlawful collective bargaining by any co-operative association or other association of farmers, dairymen, gardeners, or other producers of farm products with respect to the farm products produced or raised by its members upon land owned, leased, or cultivated by them."

The purpose of the act, as set forth in its title, is:

"An act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel."

This section of the act of Congress as amended is assailed as violating the Fifth Amendment to the federal Constitution, providing that no person shall be deprived of life, liberty, or property without due process of law, in that it creates a classification unreasonable, arbitrary, and unjust. Without attempting an extensive review of the decisions of the Supreme Court and other authorities bearing on this important question, I have chosen rather to summarize the principles enunciated in them, or clearly deducible therefrom, as the same may be applicable to this case:

[2] First. The "due process of law," by which Congress is limited in the Fifth Amendment, and the states by the Fourteenth Amendment, is equivalent to the "law of the land," and is intended to protect the citizen against arbitrary action, and secure to all persons equal and impartial justice under the law. Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616; Missouri Pacific Ry. v. Humes, 115 U. S. 512, 6 Sup. Ct. 110, 29 L. Ed. 463.

[3] Second. It seems reasonably clear that the "due process of law" provision of the Fifth Amendment is broad enough in its scope and purpose to include the "equal protection of the laws," which no state may deny to any person under the provisions of the Fourteenth Amendment. Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577, 35 L. Ed. 225; Giozza v. Tiernan, 148 U. S. 657, 13 Sup. Ct. 721, 37 L. Ed. 599.

[4] Third. Classification is allowable under these provisions of the Constitution. This is conspicuously true as to the states where certain powers, termed the police powers, relating to the safety, health, and morals of the public, exist in the sovereignty of the state, and the rights of the individual as to liberty and property are held on such reasonable conditions as may be imposed by the governing power of the state in the exercise of these police powers. With these the Fourteenth Amendment does not interfere. These powers were not surrendered by the states when the federal Constitution was adopted, nor taken from them when the Fourteenth Amendment became a part of the fundamental law of the land. Railroad Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666; Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923; Cotting v. Kansas City Stockyards Co.,

183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 Sup. Ct. 43, 45 L. Ed. 102; Bell's ·Gap R. R. Co. v. Penna., 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892.

[5] Fourth. While large discretion is necessarily given to the law--making power to discern evils and correct them by legislation, as obstacles to a greater public welfare; while they may make discriminations, if founded on distinctions which cannot be pronounced as unreasonable; while, as said by the Supreme Court of the United States in Jacobson v. Massachusetts, 197 U. S. 11, 25 Sup. Ct. 358, 49 L. Ed. 643, 3 Ann. Cas. 765:

"In every well-ordered society, charged with·the duty of conserving the safety of its members, the rights of the individual in respect to his liberty may at times under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand"

—yet, in the final analysis, the classification "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be ·made arbitrarily and without such basis. * * * Arbitrary selection can never be justified by calling it classification." Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679. In other words, no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other ·classes in the same place and in like circumstances.

[6] Fifth. The case of Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, involved the validity of a trust statute of Illinois. The act prohibited any combination of capital, ·skill, or acts by two or more persons, to create or carry out restrictions in trade, to limit or reduce the production, or increase or reduce the price of commodities, to prevent competition in manufacture, trans-·portation, or sale of commodities and merchandise and other like purposes. The act (Laws 1893, p. 182) contained this section:

"The provisions of this act shall not apply to agricultural products or live ·stock while in the hands of the producer or raiser."    ,

In an elaborate opinion, the Supreme Court held this section to be repugnant to the Fourteenth Amendment, and to be so interwoven with other sections that its invalidity affected the entire act. In its opinion the court said:

"It will be seen that, so far as the statute is concerned, two or more agri-·culturalists or two or more live stock raisers may, in respect to their products ·or live stock in hand, combine their capital, skill or acts for the purpose of ·creating or carrying out restrictions in the sale of such products or live stock, or limiting, increasing or reducing their price, or preventing competition in their sale or purchase, * * * or establishing the price of such products or stock in hand, so as to preclude free and unrestricted competition among themselves or others, or by agreeing to pool, combine or unite, any interest they may have in connection with the sale or transportation of their products ·or live stock that the price might be affected. All this, so far as the statute is concerned, may be done by agriculturalists or live stock raisers in Illinois without subjecting them to the fine imposed by the statute. But ·exactly the same things, if done by two or more persons * * * who shall have combined their capital, skill, or acts in respect of their property, mer-

chandise, or commodities held for sale or exchange, is made by the statute a public offense."

This was held by the court such discrimination against those engaged in business, other than the sale of agricultural products or live stock in the hands of producers and raisers, as is forbidden by the Fourteenth Amendment.

Applying the foregoing principles to section 4, as amended, of the Lever Act, it seems clearly repugnant to the Fifth Amendment of the federal Constitution. The nation, being confronted with the great national exigency of war with Germany, not only called several million men into the military service, but summoned all the resources of the nation to support the national cause. As food for men, feed for animals, and fuel to aid in transportation were vital necessities, the Lever Act was passed to encourage the production, conserve the supply, and control the distribution of these necessities. In section 4 every improper act intended to limit the production, enhance the price, restrain the supply, limit the transportation, or restrict the distribution of necessaries, is denounced by the statute. To destroy; to commit waste or preventable deterioration; to hoard; to monopolize or attempt to do so; to engage in any discriminatory or deceptive practice or device: to make any unreasonable rate or charge in handling or dealing in necessaries; or to conspire with others to do any of these things— is made unlawful, and punishable by fine of not more than $5,000, or imprisonment of not more than two years, or both.

All foods and feeds are the product of the soil and come from the land. Their production and initial distribution is the work of the farmer, gardener, horticulturist, vineyardist, planter, ranchman, dairyman, stockman, or other agriculturist, and all these persons are excepted from the provisions of the act. All these may with impunity, willfully, and for the purpose of enhancing the price, destroy, waste, or hoard the necessities which come from the farm. These thousands might form a gigantic combination, through any unfair device or discriminatory means, to limit the production or restrict the supply and distribution of these necessaries, that they might make greater gains by extorting excessive profits, and yet such acts, while utterly destructive of the purpose of the statute, would receive the sanction of the law; while these very same acts, committed by any other person not in the favored class, would make him a criminal, and deprive him of his property, or his liberty, or both. Surely such classification is unjust and arbitrary in the extreme, violating both the letter and the spirit of the Fifth Amendment. It was so held in an elaborate and learned opinion by Judge Anderson, of the District Court of Indiana, in the case of United States v. Armstrong (D. C.) 265 Fed. 683.

I recognize the responsibility of declaring invalid a solemn act of the law-making power of the United States. But the Supreme Court has reminded us that—

"No duty rests more imperatively upon the courts than the enforcement of these constitutional provisions intended to secure that equality of rights which is the foundation of free government."

The petition for the removal of the defendants to the Northern District of Illinois, Eastern Division, for trial, is dismissed, and the defendants are discharged.

### Order.

And now, to wit, October 21, 1920, the petition for the removal of the defendants to the Northern District of Illinois, Eastern Division, for trial, is dismissed, and the defendants are discharged.

Thereupon counsel for the United States except to the order of court, whereupon exception allowed and bill sealed.