**Application of BERNASCONI.**

**No. 689–R.**

United States District Court
N. D. California, S. D.

June 2, 1953.

---

Earl C. Berger, San Francisco, Cal., for petitioner.

J. F. O'Shea, San Francisco, Cal., Designated Naturalization Examiner Immigration and Naturalization Service.

GOODMAN, District Judge.

Petitioner was previously before this court as the plaintiff in an action under 8 U.S.C.A. § 903 for a judgment declaring her to be a citizen of the United States. On December 29, 1953, we adjudged [1] that, although born in the United States, she could not be declared to be a citizen, because she had expatriated herself by voting in the Italian political election of June 2, 1946.[2] She now seeks summary naturalization pursuant to Public Law 114, 82nd Congress, 1st Session, 65 Stat. 191, as amended by section 402(j) of the Nationality Act of 1952, 66 Stat. 278, 8 U.S.C.A. § 1435 note. Public Law 114, as amended, stipulates that persons who lost their United States citizenship by voting in a political election in Italy between January 1, 1946 and April 18, 1948 may be naturalized by taking certain oaths, provided that, subsequent to voting, they did not commit any act which would have expatriated them had they remained citizens.

In opposition to the petition for naturalization, the Government urges that petitioner in fact lost her citizenship prior to voting in the Italian election and is thus ineligible to be naturalized pursuant to Public Law 114. Petitioner relies on the judgment in the declaratory action as determinative of the manner in which she forfeited her citizenship.

The issue in the declaratory action was merely whether or not petitioner was then a citizen of the United States. The Gov-

---

1. Gualco v. Acheson, D.C., 106 F.Supp. 760.

2. Section 401(e) of the Nationality Act of 1940, 54 Stat. 1168, 8 U.S.C.A. § 801(e) provided that United States citizenship should be lost by "Voting in a political election in a foreign state or participating in an election or plebiscite to determine the sovereignty over foreign territory".

ernment claimed that she had expatriated herself in several separate ways. If any one of these acts was expatriating, petitioner was no longer a citizen. It was thus unnecessary to determine whether all of the acts relied upon by the Government were acts of expatriation or which act in point of time in fact forfeited her citizenship. Since petitioner conceded that she had voted in the Italian election, and it was clear that her voting constituted an expatriating act, the court did not consider whether she had lost her citizenship by some prior act. The form of judgment, agreed upon by the parties and entered, did not accurately reflect this basis for decision.[3] It adjudged merely that petitioner became expatriated by voting in the Italian election. But the court is satisfied and finds that petitioner *in fact* remained a citizen until she voted in the Italian election.

A brief statement of the biographical facts which are the basis for the Government's position that petitioner lost her citizenship prior to voting in the Italian election suffices to dispose of this contention. Petitioner was born in San Francisco, California on May 31, 1916. Her parents, both Italians by birth, were then naturalized citizens of the United States. In November, 1924, when petitioner was eight years old, she and her two brothers were taken to Italy by their parents. By operation of Italian law, petitioner's parents reacquired their Italian citizenship two years after they resumed their residence in Italy. As a consequence of her parent's reacquisition of Italian citizenship, petitioner also acquired Italian citizenship. She then became a dual national possessing both United States and Italian citizenship. Petitioner's parents never returned to the United States and she grew to adulthood in Italy. In November, 1945, she married an Italian citizen, Felice Bernasconi. The next year a child was born to them. On May 5, 1948, when petitioner was 31 years old, she applied for the first time for a United States

passport. The passport was denied by the State Department on the ground that she had lost her citizenship under the provisions of the Expatriation Act of 1907, 34 Stat. 1228, by failing to return to the United States upon attaining her majority. A second application for a United States passport, on November 30, 1949, was also denied on the same ground.

The Government now concedes, as it must since the decision of the United States Supreme Court in Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, that the State Department's ruling upon the passport application was erroneous and that petitioner did not forfeit her citizenship under the Expatriation Act of 1907. Its present position is that petitioner lost her citizenship under section 401(a) of the Nationality Act of 1940, 54 Stat. 1168, 8 U.S.C.A. § 801(a), by remaining abroad after January 13, 1943.

Section 401(a) of the Nationality Act of 1940 provided that a child having United States citizenship should lose his citizenship by acquiring citizenship in a foreign state through the naturalization there of a parent having legal custody, unless the child acquired a permanent residence in the United States by his twenty-third birthday or within two years after January 13, 1941, the effective date of the Act. This was one of several provisions in the Nationality Act of 1940 subjecting United States citizenship to forfeiture by residence abroad.[4] The purpose of these provisions was to relieve the United States from the embarrassment ensuing when American citizens exposed themselves to conflicting demands for allegiance by residing in a foreign state which also claimed them as citizens. These provisions were thus designed to force such dual nationals to elect whether to return to the United States or to forfeit their United States citizenship and relieve the United States of further responsibility. Prior to the Nationality Act of 1940, these dual nationals could reside indefinitely in the for-

3. The opinion filed in the declaratory action states the basis for the court's decision that petitioner was not a citizen of the United States, Gualco v. Acheson, D.C., 106 F.Supp. 760.

4. Other sections of the Nationality Act of 1940 which made residence abroad an expatriating act were sections 404 and 407, 8 U.S.C.A. §§ 804, 807.

eign state claiming their allegiance without losing their United States citizenship.

Although the purpose of the provisions of the Nationality Act of 1940, forfeiting citizenship by reason of residence abroad, was meritorious, they became effective at an unfortunate time. Much of the world was then at war and the United States was drawn into the conflict within the year. Many Americans abroad found it impossible to return to the United States within the time permitted. The Congress extended the time limit specified in several of these provisions.[5] It did not extend the time limit fixed by section 401(a).[6] However, this Court has previously held that the Congress did not intend that citizenship should be forfeited under section 401(a) unless the failure to return to the United States by the statutory deadline was voluntary.[7] Realistically speaking, after the statutory duty was imposed upon petitioner to return to the United States by January 13, 1943 to preserve her citizenship, it was impossible for her to do so. When the Nationality Act of 1940 became law, on January 13, 1941, Italy was then at war. Within the year Italy was at war with the United States. Under these circumstances, to hold that petitioner's failure to return was voluntary would require a determination that she would not have returned to save her citizenship even if she could have done so. At best the court could do no more than speculate as to what might have been petitioner's reaction to the choice so suddenly demanded of her had she been free to choose. Forfeiture of ctizenship should not rest on speculation. It must be concluded that petition-

er's failure to return to the United States by January 13, 1943 was involuntary and she did not thereby forfeit her citizenship.

The fact that petitioner was not free to choose between American citizenship and continued residence abroad by the statutory deadline, did not postpone forever her duty to make the choice. The duty still rested upon her to choose within a reasonable time after she was free to do so. During the war years, petitioner resided with her parents in Arquata Scrivia, Alessandria Province, in northern Italy. This part of Italy was not free from German domination until the spring of 1945. It was approximately a year later that petitioner voted in the Italian election of June 2, 1946. Certainly the year that elapsed between the termination of hostilities and the election could not be said to be an undue length of time for making arrangements to come to the United States. Thus, the Court concludes that she remained a citizen until she voted in the Italian election. By that act, as we previously held, she expatriated herself.

Since petitioner expatriated herself by voting in the Italian election of June 2, 1946, she is entitled to be naturalized pursuant to Public Law 114, unless, subsequent to voting, she committed an act which would have expatriated her had she remained a citizen. The Government contends, and the Court agrees, that subsequent to voting she did perform an expatriating act under section 401(a) of the Nationality Act of 1940 by continuing to remain in Italy without making any effort to return to the United States until May 5, 1948.[8] Three years had then passed since the end of hostilities in

5. 55 Stat. 743; 56 Stat. 779; 58 Stat. 747; 59 Stat. 544.

6. H.R. 5496, 78th Congress, 2nd Session, a bill extending the deadline fixed in section 401(a) to January 13, 1947 passed the House on December 4, 1944. 90th Congressional Record 8763. This bill died with the 78th Congress. It was reintroduced in the 79th Congress as H.R. 387. It received a unanimous favorable report by the House Committee on Immigration and Naturalization, House Report, 163, 79th Congress, 1st Session, but was defeated on the floor of the House. 91 Congressional Record 4649.

7. The court so held in determining in the previous declaratory action that petitioner's brother had not lost his United States citizenship. Gualco v. Acheson, D. C., 106 F.Supp. 760.

8. The Government also contends that after voting petitioner committed an act of expatriation under section 407 of the Nationality Act of 1940, 54 Stat. 1170, 8 U.S.C.A. § 807 by failing to return to the United States by October 14, 1946. But section 407 was clearly inapplicable to petitioner. It applied only to persons who during their minority were in the custody of parents who lost their Ameri-

Italy. This period, in which petitioner was free to return to the United States, was a year longer than that originally accorded by section 401(a) for return to the United States after the Nationality Act became law. Thus, this was prima facia an unreasonable delay. There are no circumstances in the record that would justify relieving petitioner of her duty to return to the United States. Undoubtedly she could not have returned even after hostilities had ended without some difficulty. But, the disability to return must be real and substantial to obviate a forfeiture under section 401(a), else the statute would be rendered nugatory.

With more optimism than logic, petitioner has argued that despite the explicit language of section 401(a), the Supreme Court has ruled that the Nationality Act of 1940 did not make prolonged residence abroad by a native-born American, possessing dual nationality acquired through the naturalization of his parents, an act of expatriation. The basis for this argument is certain language employed by the Supreme Court in Mandoli v. Acheson, 1952, 344 U.S. 133, 137, 73 S.Ct. 135, 137. The Court there said that "The Nationality Act of 1940, though not controlling here, shows the consistency of congressional policy not to subject a citizen by birth to the burden and hazard of election at majority. * * * While in some other respects Congress enlarged the grounds for loss of nationality, it refused to require a citizen by nativity to elect between dual citizenships upon reaching a majority." Blind reliance upon this language might sustain petitioner's argument. Indeed this view has been judicially accepted, albeit with considerable reluctance.[9] But, the statement of the Supreme Court, itself, discloses that it is a mere dictum. Furthermore, consideration of the facts in the Mandoli case shows that the Court was referring to Americans who acquired their dual nationality at birth, rather than through the naturalization of their parents. Any broader sweep to the Supreme Court's dictum ob-

viously was inadvertent and contrary to the plain language of section 401(a).

Petitioner urges that even if prolonged residence abroad constituted a statutory act of expatriation, the framers of Public Law 114 could not have intended that such residence, occurring after voting, should result in ineligibility for summary naturalization. This is so, she contends, because it is obvious that had she attempted to return to the United States after voting she would have been denied a passport on the ground she was no longer a citizen. Had petitioner indicated a desire to return to the United States by applying for a passport within a reasonable time, and had the passport been denied, she would not have become ineligible for naturalization under Public Law 114 by her failure to return to the United States. The Senate Committee on the Judiciary, reporting on H.R. 400 which became Public Law 114, specifically declared that in its opinion "the state of being or remaining abroad because of inability to obtain documentation as a United States citizen should not be regarded as constituting" an act of expatriation.[10] But, Public Law 114 should not operate to excuse continued residence abroad by those who made no effort within a reasonable time to secure documentation to the United States. Otherwise those who manifested at least a measure of allegiance to Italy by actively participating in a political election would be placed in a more favorable position than those who merely resided there. Public Law 114 was prompted by the desire of the Congress to facilitate the reacquisition of citizenship by sincere Americans who were pressured into voting in the Italian election. It was not intended to benefit those whose subsequent conduct confirmed their devotion to Italy. It must be remembered that a proceeding pursuant to Public Law 114 is a naturalization proceeding, summary though it may be. Our naturalization laws are grounded on the principle that applicants must prove their attachment to the

can citizenship under section 404 of the Nationality Act of 1940. Petitioner had already attained her majority at the time the Nationality Act of 1940 became law.

9. See Gaudio v. Dulles, D.C.1953, 110 F. Supp. 706, 710–711.

10. Senate Report 351, 82nd Congress, 1st Session.

Constitution.[11] The evidence shows that petitioner, during the period following her vote in the Italian election was still thoroughly integrated in the social and economic life of Italy. Nothing indicates that she had the slightest attachment to the United States or to the principles of our Constitution.[12]

Petitioner also urges that section 401(a) is constitutionally invalid, and hence cannot operate to preclude her naturalization pursuant to Public Law 114. The potential constitutional infirmity, inherent in the discriminatory character of section 401(a), was discussed in the opinion filed in the previous action for a declaratory judgment.[13] Section 401(a) arbitrarily discriminates between American citizens possessing dual nationality by imposing a duty to return to the United States to preserve their citizenship only upon those who acquired their dual nationality through the naturalization of their parents. As the Supreme Court noted in the Mandoli case, the Nationality Act of 1940 imposed no duty to return to the United States upon those who acquired their dual nationality at birth, except in certain instances.[14] Such discrimination between citizens is suspect in the light of the due process demands of the Fifth Amendment.

But, it was not determined in the declaratory action that section 401(a) transcends the bounds of due process. Such determination would entail the resolution of grave constitutional questions. The Supreme Court has never defined the limits which the Fifth Amendment places upon Federal legislation discriminating between citizens.[15] And only in a few instances have the lower courts struck down discriminatory Federal legislation as violative of the Fifth Amendment.[16] Doubtful constitutional questions should not be entertained unless they are squarely presented by the facts of a justiciable controversy. The constitutional question is only obliquely tendered here.

Petitioner is not now defending her citizenship. She is here as an alien seeking naturalization. She has no standing to complain that section 401(a) arbitrarily discriminates between citizens. Her noncompliance with section 401(a) is not now asserted against her as an act forfeiting her citizenship, but as an act rendering her ineligible for summary naturalization. Aliens in the United States are persons entitled to the protection of the Fifth Amendment,[17] but they have no constitutional right to be naturalized. Our naturalization laws are marked by numerous arbitrary discriminations. For Congress is free to condition the privilege of naturalization as it sees fit.[18] Whatever constitutional infirmities section 401(a) might have as a statute of expatriation do not disqualify it as a statute conditioning naturalization.

Denial of this petition is a determination only of petitioner's application for summary naturalization. It in no way is intended to preclude resort to ordinary naturalization procedures.

Petition for summary naturalization denied.

11. 8 U.S.C.A. § 1427(a).

12. See Cantoni v. Acheson, D.C.N.D.Cal. 1950, 88 F.Supp. 576.

13. Gualco v. Acheson, D.C., 106 F.Supp. 760, 768.

14. Section 407 of the Nationality Act of 1940, 8 U.S.C.A. § 807, required dual nationals by birth to return to the United States to preserve their citizenship if during their minority they were in the custody of parents who were naturalized in a foreign state.

15. See Antieu, "Equal Protection Outside the Clause," 40 California Law Review 362 (1952).

16. United States v. Armstrong, D.C.Ind. 1920, 265 F. 683; United States v. Yount, D.C.W.D.Pa.1920, 267 F. 861; Anderson v. Scholes, D.C.Alaska 1949, 83 F.Supp. 681, territorial legislation.

17. Wong Wing v. United States, 1896, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140; Colyer v. Skeffington, D.C.Mass.1920, 265 F. 17.

18. Kharaiti Ram Samras v. United States, 9 Cir., 1942, 125 F.2d 879.