<hr/>

## BLANSET v. CARDIN et al.

(Circuit Court of Appeals, Eighth Circuit. November 5, 1919.)

No. 5390.

1. STATUTES ⏂219—CONSTRUCTION OF STATUTE BY EXECUTIVE DEPARTMENT OF GREAT WEIGHT.

Where the meaning of a statute is doubtful, great weight is given to the construction placed upon it by the department charged with its execution.

2. INDIANS ⏂15(1)—ADMINISTRATIVE REGULATIONS HAVE EFFECT OF LAW.

Regulations of the Department of the Interior for the protection of Indians and their property, authorized by Congress and not inconsistent with law, have the force of law.

3. WILLS ⏂11, 25—RIGHT TO MAKE WILL DISPOSING OF PROPERTY IN DEROGATION OF STATE LAW.

Under Act Cong. Feb. 14, 1913, amending Act. June 25, 1910, § 2 (Comp. St. § 4228), allowing persons interested in allotments, held under trust or patent containing restrictions on alienation, to dispose of such property by will, and the regulations thereunder, a will by an Indian married woman, approved by the Secretary of the Interior disposing of all of her allotted lands, is valid, notwithstanding Rev. Laws Okl. 1910, § 8341, providing that no married woman shall bequeath more than two-thirds of her property away from her husband, and that no person prevented by law from alienating real property shall be allowed to dispose of the same by will.

4. INDIANS ⏂15(1)—CONGRESSIONAL POWER TO CONTROL DISPOSITION OF ALLOTMENTS.

Congress has the right to pass legislation in the interest of Indians as a dependent people, and may control the disposition of allotments during the periods of restriction on alienation.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Frank A. Youmans, Judge.

Bill by Mike Blanset against Oscar Cardin, as guardian, etc., and others. From a decree dismissing the bill, complainant appeals. Affirmed.

Paul A. Ewert, of Joplin, Mo., and Henry C. Lewis, of Washington, D. C., for appellant.

A. C. Wallace, of Miami, Okl., for appellees.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This record presents an appeal from a decree of the District Court sustaining a motion to dismiss the plaintiff's bill because the bill failed to state a cause of action. The suit was

brought by plaintiff, as the surviving husband of Fannie Crawfish Blanset, against her three children, two of whom were her issue by a former marriage and one the issue of the marriage between her and the plaintiff.

Plaintiff and Fannie Crawfish were married August 3, 1906, and she died in Oklahoma on February 22, 1916. It is claimed that she was a member of the Quapaw Tribe of Indians, and at the time of her death was the owner of lands, some of which had been allotted to her under the provisions of the act of Congress approved March 2, 1895 (28 Stat. 907, c. 188), and some of which she held as the heir of her mother, a Quapaw allottee.

It is alleged that Fannie Crawfish Blanset, shortly before her death, executed a will whereby she gave and bequeathed $5 to her husband, the plaintiff, and devised all of the lands to her three children, and that this will was approved by the Commissioner of Indian Affairs and by the Secretary of the Interior. The plaintiff avers that no written marriage contract had been entered into between himself and Fannie Crawfish Blanset, and that he is the owner of an undivided one-third of the lands of which she died seized by virtue of the statutes of Oklahoma, and prays that as to him the will may be canceled, and that his title to one-third share of the lands may be quieted. It is conceded that Mrs. Blanset, at the time of her death, held her lands under patents containing restrictions on alienation, and that the restrictive period had not expired. The questions presented upon these facts depend on the proper application and construction of certain statutes of the United States and of the state of Oklahoma.

[1-3] An act of Congress approved February 14, 1913 (37 Stat. 678, c. 55) amending Act June 25, 1910, c. 431, § 2, 36 Stat. 856 (Comp. St. § 4228), contains this provision:

"Sec. 2. That any persons of the age of twenty-one years having any right, title, or interest in any allotment held under trust or other patent containing restrictions on alienation or individual Indian moneys or other property held in trust by the United States shall have the right prior to the expiration of the trust or restrictive period, and before the issuance of a fee simple patent of the removal of restrictions, to dispose of such property by will, in accordance with regulations to be prescribed by the Secretary of the Interior: Provided, however, that no will so executed shall be valid or have any force or effect unless and until it shall have been approved by the Secretary of the Interior: Provided further, that the Secretary of the Interior may approve or disapprove the will either before or after the death of the testator, and in case where a will has been approved and it is subsequently discovered that there has been fraud in connection with the execution or procurement of the will the Secretary of the Interior is hereby authorized within one year after the death of the testator to cancel the approval of the will, and the property of the testator shall thereupon descend or be distributed in accordance with the laws of the state wherein the property is located: Provided further, that the approval of the will and the death of the testator shall not operate to terminate the trust or restrictive period, but the Secretary of the Interior may, in his discretion, cause the lands to be sold and the money derived therefrom, or so much thereof as may be necessary, used for the benefit of the heir or heirs entitled thereto, remove the restrictions, or cause patent in fee to be issued to the devisee or devisees, and pay the moneys to the legatee or legatees either in whole or in part from time to time as he may deem advisable, or use it for their benefit: Provided also, that sections one and two of this act shall not apply to the Five Civilized Tribes or the Osage Indians."

The Secretary of the Interior has adopted regulations under this act, which provide that the Indian superintendent of the district of the property to be conveyed shall assist the Indian in the drawing of his will, so it shall express the wishes of the maker, but without influencing him in the disposition he desires to make. The superintendent is directed to report as to the mental competency of the Indian, the circumstances attending the execution of the will, the influences which induced its execution, the names of those entitled to share in the estate under the state laws of descent, and where the distribution proposed by the will has cut off natural heirs and disposed of the estate to persons who would not otherwise inherit the superintendent is directed to obtain from the testator, if living, an affidavit setting forth the reasons for so disinheriting such natural heirs. In case the testator is dead, he is to endeavor to learn from reliable sources the reasons for making such disposition. The competency of legatees or devisees to manage their own affairs is also to be investigated. In cases where a will has been made and the testator has died before submitting the will for the consideration of the Department of the Interior, a hearing is directed to be held to determine his legal heirs, and where the distribution to be made under the will differs from that which would otherwise have been made under the state law of descent, if the testator had died intestate, the legal heirs are to be given notice and opportunity to object to its approval.

It is appellant's contention that, notwithstanding this act of Congress and the reguluations made thereunder by the Secretary of the Interior, a married Quapaw Indian may not make a will in Oklahoma, whereby more than two-thirds of the allotted lands held under a patent from the United States, containing restrictions on alienation, are devised to persons other than the spouse of the testator. He claims that in such a case section 8341 of the Revised Laws of Oklahoma (1910) applies, which reads as follows:

"Every estate and interest in real or personal property to which heirs, husband, widow, or next of kin might succeed, may be disposed of by will: Provided, that no marriage contract in writing has been entered into between the parties; no man while married shall bequeath more than two thirds of his property away from his wife, nor shall any woman while married bequeath more than two-thirds of her property away from her husband: Provided, further, that no person who is prevented by law from alienating, conveying or incumbering real property while living shall be allowed to bequeath same by will."

Appellant claims that the act of Congress heretofore quoted assumes that this section of the Oklahoma laws of descent and distribution shall continue in force as to wills of Indians authorized to be made by the act of Congress, because it did not expressly provide how such lands should be devised, and because it recognized the state laws of descent as applicable in case the Secretary disapproved a will after the death of the testator. We cannot agree with this contention. Before the enactment by Congress this testatrix could not have made a will conveying this land because of the prohibition in the last proviso of this section 8341 of the Oklahoma laws. The grant of the right to dispose

of this property by will is clear and comprehensive, it contains no limitation as to portions of property to be devised nor as to the devisees to be selected, nor other restraint upon the exercise of the power, except that the disposal must be in accord with the regulations to be prescribed by the Secretary of the Interior and that the will must be approved by him.

The fact that Congress provided that the state law of descent should control in case a will was disapproved after the testator's death indicates an intent that it should not otherwise control. The general policy of Congress has been to maintain control over the Indians and the disposition of their allotments, according to its ideas of what is beneficial for them, rather than to subject them to state laws. Congress was well advised that unworthy and designing persons sometimes contract marriages with Indians with a view to obtaining the benefit of the property which the United States has granted to the Indians and that the right of a testator or testatrix to select devisees, and the right of the Interior Department to disallow any will, would often afford needed protection to dependent and natural heirs against the waste of the estate as the result of an unfortunate marriage and enforced inheritance by state laws. Where the meaning of a statute is doubtful, great weight is given to the construction placed upon it by the department charged with its execution (Swigart v. Baker, 229 U. S. 187, 33 Sup. Ct. 645, 57 L. Ed. 1143; Jacobs v. Prichard, 223 U. S. 200, 32 Sup. Ct. 289, 56 L. Ed. 405; United States v. Hermanos, 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821), and regulations of a department, authorized by an act of Congress in the execution of an act and not inconsistent with it, have the force of law (In re Kollock, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813; United States v. Foster, 233 U. S. 515, 34 Sup. Ct. 666, 58 L. Ed. 1074; United States v. Smull, 236 U. S. 405, 35 Sup. Ct. 349, 59 L. Ed. 641; McKinley v. United States, 249 U. S. 397, 39 Sup. Ct. 324, 63 L. Ed. 668).

The regulations which have been adopted by the Secretary of the Interior in the execution of this statute require the local Indian superintendent to submit such Indian wills to the department, but to report the names of those entitled to inherit by the state law of descent, and where the distribution proposed by the will has cut off natural heirs; and disposed of all the estate to persons who would not otherwise inherit, there is to be obtained from the testator, if living, or from other reliable sources, if he is dead, the reasons for so disinheriting natural heirs. No provision is made for the probate of such wills in the state courts, but they are to be approved or disapproved by the Secretary of the Interior and filed for record in that department. Legal heirs are to be given notice and a hearing, before a will is approved, "where the distribution made in the will differs from that which would otherwise be made under the state law." The construction thus placed upon the acts by the department shows that the state law of descent was not regarded as controlling. This act of Congress is not limited to Indians in Oklahoma, but confers a right upon all Indians in the United States of the class named to dispose of such property by will. It was intended to lessen the restrictions on alienation that had theretofore

prevailed. It is much more reasonable to suppose that Congress was conferring a uniform right upon such Indians than that it was making a grant subject to the varied restrictions and prohibitions on alienation by will that might exist in the several states.

[4] It is conceded that Congress has the right to pass legislation in the interest of the Indians as a dependent people, and that it may control the disposition of the allotments during the period of restriction of alienation. Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738; Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820. The conclusion is that it was the intention of Congress that this class of Indians should have the right to dispose of property by will under this act of Congress, free from restrictions on the part of the state as to the portions to be conveyed or as to the objects of the testator's bounty, provided such wills are in accordance with the regulations and meet the approval of the Secretary of the Interior. We understand this conclusion is in accord with the views of the Supreme Court of Oklahoma. See Brock v. Keifer, 157 Pac. 88.

The decree will be affirmed.