Lewis M. WATSON, Plaintiff in Error,

v.

STATE ELECTION BOARD, and George D. Key, Chairman, Stanley Nisewander, Member, and Leo W. Winters, Secretary thereof, Defendants in Error.

No. 37519.

Supreme Court of Oklahoma.

Oct. 16, 1956.

Rehearing Denied Oct. 23, 1956.

George Bingaman, Purcell, Paul Pugh, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., for defendants in error.

HALLEY, Justice.

Lewis M. Watson filed this original action in this Court against the State Election Board and its members, seeking a Writ of Mandamus requiring the State Election Board to issue for him a certificate of nomination for the Office of State Representative, Place No. 2, Pontotoc County, Oklahoma, and to certify his name to the Secretary of Pontotoc County Election Board as the nominee of the Democratic Party for the Office of State Representative, Place No. 2, and that his name be placed on the official ballot for the General Election in November, 1956.

Plaintiff bases his action upon the following undisputed facts. On July 3, 1956,

Claude V. Thompson was nominated by the Democratic voters of Pontotoc County as their candidate for the office of State Representative, Place No. 2; on July 21, 1956, Mr. Thompson died, leaving a vacancy in the list of nominees in the office of State Representative, Place No. 2; that thereafter plaintiff a resident of said County, was named as the substitute candidate by the County Central Committee of the Democratic Party, being the County in which the deceased Claude V. Thompson was a candidate; that plaintiff acting as such substitute nominee, filed with the Secretary of the State Election Board a notification of candidacy as prescribed by law and has done all things prescribed by law to entitle him to have his name placed upon the official ballot as the substitute nominee of the Democratic Party for the office named.

Plaintiff further alleged that he possessed all of the qualifications required by law to become a substitute nominee and that he has complied with all the required procedure by the applicable statutes, being principally Section 233, 26 O.S.Supp.1955 and 26 O.S.1951 § 162, and attached to his petition copies of all instruments required to entitle him to have his name placed on the ballot as a candidate.

He also alleged that on September 7, 1956, the Secretary of the State Election Board advised him that it had refused to certify his name to the Secretary of the County Election Board as the proper person to have his name placed on the ballot as the substitute nominee. He alleged that the action of the State Election Board is arbitrary and without authority of law; that this Court has original jurisdiction to issue Writs of Mandamus under Article 7, Section 2 of the Oklahoma Constitution and by Section 1451, Title 12 of the Statutes; that plaintiff is without adequate remedy of law and that no other court has jurisdiction to grant him the relief prayed for which involves matters of vital public interest and concern.

Plaintiff prays that a Writ of Mandamus be issued and directed to the defendants requiring them to issue to him a certificate of nomination to the Office of State Representative, Place No. 2, Pontotoc County, and ordering them to certify to the Secretary of Pontotoc County Election Board his name as such nominee, and directing that his name be placed upon the official ballot for the coming general election.

The defendants admit that the allegations set out in plaintiff's petition for a Writ of Mandamus are sufficient to warrant this Court in assuming original jurisdiction, but deny that the facts alleged are sufficient to constitute a cause of action in favor of the plaintiff and against the defendants or to justify the issuance of the Writ of Mandamus prayed for.

The defendants filed a response to the petition of the plaintiff for a Writ of Mandamus in which they point out the material parts of Section 233, supra, and concluded that where a nominee for a State Office of a political party dies, as here, prior to the general election, the State Central Committee of the party of which deceased was a nominee should file with the State Election Board an affidavit stating the facts of a vacancy, and if a vacancy was found to exist the State Central Committee should nominate a substitute nominee whose name should be placed upon the ballot.

Section 233, supra, provides in part that if a nominee "Should he be dead or removed from the jurisdiction (the state, district, county, township, municipality)," or should he refuse to file such notice that he declines to run for any reason, "then the chairman, or secretary, of the political party of which he was the nominee may file with the proper election board or official an affidavit stating the facts; and if such election board finds a vacancy to exist after a nomination, and before the printing of the official ballot for the general election, the central committee of the political party affected, and for the jurisdiction in which the nominee was a candidate, may in writing nominate a substitute candidate; provided such person nominated as a substitute candidate shall be selected from the politi-

cal party from which such candidate creating the vacancy was nominated. * * * "

It appears that in August, 1956, the Attorney General of Oklahoma, now appearing for the defendants, was asked by Governor Gary for an opinion as to "with whom does the authority lie to fill such vacancy and what procedure should be followed after the death of the Democratic nominee for State Representative, Place No. 2, Pontotoc County." The Attorney General in reply quoted largely from an opinion dated September 11, 1930, upon the identical question now before us. The 1930 opinion was rendered upon the request of the then Secretary of the State Election Board. When that opinion was given Section 6183 Compiled Oklahoma Statutes of 1921 was in effect and is the same as the present Section 233, supra, with certain amendments that are not material here. It was pointed out that the law as announced in the 1930 opinion by the Attorney General has been consistently followed and was to the effect that where a vacancy occurs by the death of a nominee for State Representative such vacancy should be filled by the State Central Committee and not by the County Central Committee, because a State Representative is a State Office and not a County Office. This has been the practice since Statehood in both the Democratic and Republican parties.

It is pointed out in the 1930 opinion of the Attorney General that legislative districts were sometimes formed from the territory of two or more counties and that sometimes a county would be divided into two or more legislative districts. However, all Representatives, regardless of the territory which comprises their district and regardless of the manner of their nomination and election are State Officers and when elected represent in the Legislature the entire State of Oklahoma, and that it follows that a County Central Committee would often find it impossible to make the affidavit required by Section 6183, supra, or to moninate a substitute nominee for a legislative district.

We cannot conceive of the Legislature placing in the hands of the Central Committee of two counties comprising a legislative district of two or more counties the authority to nominate a substitute candidate for the Legislature. The members of the Legislature are State Officers and file their nominating petitions with the State Election Board, even though the territory of their district may be identical with that of one of the counties of the State.

Plaintiff asserts that our form of government requires that Representatives be elected by the people they represent. We do not take issue with that statement, but it should be kept in mind that every Representative represents all of the people of the State since they occupy a State Office.

We agree that where the language of a statute is clear and its meaning is plain and unmistakable, there is no room for construction. We cannot agree that the language of Section 233, supra, is entirely clear. We refer to that portion which is as follows:

"* * * Should he be dead or removed from the jurisdiction (the state, district, county, township, municipality), or should he refuse to file such notice, then the chairman, or secretary, of the political party of which he was the nominee may file with the proper election board or official an affidavit stating the facts; and if such election board finds a vacancy to exist after a nomination, and before the printing of the official ballot for the general election, the central committee of the political party affected, and for the jurisdiction in which the nominee was a candidate, may in writing nominate a substitute candidate; * * *."

It may be asked with reason what "central committee of the political party affected" is here intended? There is a State Democratic Central Committee and a Democratic Central Committee for each county, and it may be also asked what is meant by the following clause "and for the jurisdiction in which the nominee was a can-

didate"? Is it the "jurisdiction" of each member of the Legislature of the entire State, or is it merely the district or county in which he was a candidate? We think the above provisions justify a judicial interpretation.

On the interpretation of statutes we find that in McCain v. State Election Board, 144 Okl. 85, 289 P. 759, 760, this Court announced in the third paragraph of the syllabus as follows:

> "The construction which has been placed upon a statute by the officer or governmental department charged with the carrying out of the provisions of the law is to be accorded due consideration by the courts in construing the statute."

In Blanset v. Cardin, 8 Cir., 261 F. 309, 256 U.S. 319, 41 S.Ct. 519, 65 L.Ed. 950, it was also announced that where the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution.

■ We think this idea is well expressed in 82 C.J.S., Statutes, § 359, as follows:

> "The contemporaneous construction placed on an ambiguous statute by the officers or departments charged with its enforcement and administration is to be considered and given weight in construing the statute, especially if such construction has been uniform and consistent and, has been observed and acted on and acquiesced in for a long time."

■ We take judicial notice that since Statehood the Office of State Representative has been recognized as a State Office and that as early as 1930, the Attorney General of Oklahoma interpreted the above statute relative to substitute nominees as vesting the right to name such substitute nominees in the State Central Committee and not in the County Central Committee.

The defendants have pointed out that the State Central Committee of the political party of which the original nominee was a member has made all nominations of members of our State Legislature when vacancies have occurred through death of the nominee or otherwise without exception or deviation. It has been done innumerable times according to records in the Office of the Secretary of the State Election Board.

Since those charged with administering the above law interpreted it contrary to plaintiff's contentions since Statehood, and such statute has been interpreted by our Attorney General to mean that the State Central Committee or its duly authorized Executive Committee when its State Central Committee is not in session, and not the County Central Committee has the duty and is authorized to select a substitute candidate where the nominee for a State Office has died prior to the General Election and such interpretation is reasonable, we conclude that such nomination must be made by the State Central Committee or its Executive Committee and that the Writ prayed for by the plaintiff be, and it is hereby denied.

JOHNSON, C. J., and CORN, JACKSON and CARLILE, JJ., concur.

WILLIAMS, V. C. J., and WELCH and BLACKBIRD, JJ., dissent.

WILLIAMS, Vice Chief Justice (dissenting).

Members of the House of Representatives of the State of Oklahoma, although state officials, represent the people living in their respective districts.

That portion of the statute quoted by the majority, at the beginning of the quotation, clearly uses the word "jurisdiction" in the sense of "geographical area."

Then certainly the legislature, by the use thereof again in the same paragraph, yes, even in the very same sentence, in providing that "the central committee of the political party affected, and for the *jurisdiction in which* the nominee was a candidate, may in writing nominate a substitute candidate; * * *" meant the central committee of the *geographical area*

*in which* the nominee was a candidate, or in this case, Pontotoc County. (Emphasis supplied.)

As said by the majority, "where the language of a statute is clear and its meaning is plain and unmistakable, there is no room for construction."

I, therefore, respectfully dissent.

I am authorized to state the Mr. Justice WELCH and Mr. Justice BLACKBIRD concur in the views herein expressed.