Political Parties — Vacancy — Substitute Nominee In the case of a vacancy of a state senate seat, 26 O.S. 233 [26-233] (1968), requires the chairman or secretary of the state party of the nominee to file the affidavit stating the facts. A regular party nominee must have changed his residence outside of the state. The vacancy occurs at the moment the state election board makes a finding that a vacancy exists. The State Committee, rather than the County Committee, is the proper group to nominate a substitute candidate for state senate in the event of a vacancy. The office of the state senate has senatorial jurisdiction and therefore, it is immaterial that the senatorial district lies within a single county. The Republican State Executive Committee is the proper party to select a substitute nominee when the Republican State Committee is not in session. When the affidavit is filed in accordance with Section 233, other than by the nominee, the nomination of a substitute nominee must occur subsequent to the finding of a vacancy by the State Election Board. The Attorney General has had under consideration your letter of September 25, 1968, wherein you ask the following questions: "1. In the case of the vacancy of a state senate seat, does the state law require the Chairman or Secretary of the State party or of the County party to file the necessary affidavits stating the facts? "2. What conduct is necessary on the part of the regular party nominee in order that he comply with the statutory requirement that he had moved his residence from the jurisdiction and at what point does the vacancy then actually occur? "3. What political party committee is the proper one to nominate the substitute candidate, where the state senatorial district in question lies entirely within a single county? "4. On page 138 of the Watson opinion, the Supreme Court of Oklahoma states that when the State Central Committee (in that case the Democratic party) is not in session, that its duly authorized executive committee has the power and is authorized to select a substitute candidate. In the instant situation, the vacating nominee is of the Republican party, which does not make reference to a `central Committee' in its party rules, but rather refers to a `State Committee' and a State Executive Committee, a County Committee and a County Executive Committee. To which Committee does the statute refer in terms of the Republican party, and can the Executive Committee of the proper party unit select a substitute nominee when the full committee is not in session? "5. Can the proper party committee, in anticipation of a vacancy in the near future, meet and make a selection of the substitute nominee, or must the selection of the substitute nominee be made only after such a finding is made by the State Election Board? "6. Section 233 refers to a committee which shall have the authority to select and substitute a candidate. However, Rule 7 of the Rules of the Republican Party of the State of Oklahoma states, in sub-section (d), that the County Executive Committee shall act at all times in an advisory capacity to the County Chairman. The rule and the statute thus appear to be in conflict. Who, then, has the authority to select a substitute candidate the County Chairman upon the advice of the County Executive Committee or the Committee itself?" Title 26 O.S. 233 [26-233] (1967), provides in relevant part: "Should any nominee of a political party for any cause decline to run as the party nominee after a nomination has been made as herein provided, such nominee, if living, shall in writing, duly acknowledged before a notary public, notify the election board or officer with whom was filed the nominating petition of his candidacy that he will no longer be a candidate. If withdrawal is made within twenty days from the date of the primary election at which such nomination is made, or within twenty days from the close of the fling period in the case of a nominee who is unopposed in the primary election, the respective party officials may fill such vacancy within a period of ten days from the date of filing such withdrawal; provided, however, that if withdrawal is made more than twenty days from such date no replacement of the party nominee shall be permitted. Should he be dead, or should he have moved his residence from the jurisdiction (the state, district, county, township, or municipality), the chairman or secretary of the political party of which he was the nominee may file with the proper election board or official an affidavit stating the facts. If such election board finds a vacancy to exist after a nomination and before the printing of the official ballot for the general election, the central committee or committees of the political party affected and for the jurisdiction in which the nominee was a candidate may, in writing, nominate a substitute candidate; provided, that if the jurisdiction is a county or a district smaller than a county, the central committee of the county from which the regular nominee was nominated shall nominate the substitute nominee for the office. If the jurisdiction is greater than a county and smaller than the state, the following procedure shall be adhered to: . . . ." (Emphasis added) The Supreme Court of Oklahoma stated in the body of its opinion in Watson v. State Election Board, Okl., 302 P.2d 134, as follows: "We agree that where the language of a statute is clear and its meaning is plain and unmistakable, there is no room for construction. We cannot agree that the language of Section 233, is entirely clear. We refer to that portion which is as follows: "`. . . Should he be dead or removed from the jurisdiction (the state, district, county township, municipality), or should he refuse to file such notice, then the chairman or secretary, of the political party of which he was the nominee may file with the proper election board or official an affidavit stating the facts; and if such election board finds a vacancy to exist after a nomination, and before the printing of the official ballot for the general election, the central committee of the political party affected, and for the jurisdiction in which the nominee was a candidate, may in writing nominate a substitute candidate; . . . .' "It may be asked with reason what `central committee of the political party affected' is here intended? There is a State Democratic Central Committee and a Democratic Central Committee for each county, and it may be also asked what is meant by the following clause `and for the jurisdiction in which the nominee was a candidate'? Is it the `jurisdiction' of each member of the Legislature of the entire State, or is it merely the district or county in which he was a candidate? We think the above provisions justify a judicial interpretation. "On the interpretation of statutes we find that in McCain v. State Election Board, 144 Okl. 85,289 P. 759, 760, this Court announced in the third paragraph of the syllabus as follows: "'The construction which has been placed upon a statute by the officer or governmental department charged with the carrying out of the provisions of the law is to be accorded due consideration by the courts in construing the statute.' "In Blanset v. Cardin, 8 Cir., 261 F. 309, 256 U.S. 319,41 S.Ct. 519, 65 L.Ed. 950, it was also announced that where the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution. "We think this idea is well expressed in 82 C.JS., Statutes, Section 359, as follows: "'The contemporaneous construction placed on an ambiguous statute by the officers or departments charged with its enforcement and administration is to be considered and given weight in construing the statute, especially if such construction has been uniform and consistent and, has been observed and acted on and acquiesced in for a long time.' "We take judicial notice that since Statehood the Office of State Representative has been recognized as a State Office and that as early as 1930, the Attorney General of Oklahoma interpreted the above statute relative to substitute nominees as vesting the right to name such substitute nominees in the State Central Committee and not in the County Central Committee. "The defendants have pointed out that the State Central Committee of the political party of which the original nominee was a member has made all nominations of members of our State Legislature when vacancies have occurred through death of the nominee or otherwise without exception or deviation. It has been done innumerable times according to records in the Office of the Secretary of the State Election Board. "Since those charged with administering the above law interpreted it contrary to plaintiff's contentions since Statehood, and such statute has been interpreted by our Attorney General to mean that the State Central Committee or its duly authorized Executive Committee when its State Central Committee is not in session, and not the County Central Committee has the duty and is authorized to select a substitute candidate where the nominee for a State Office has died prior to the General Election and such interpretation is reasonable, we conclude that such nomination must be made by the State Central Committee or its Executive Committee and that the Writ prayed for by the plaintiff be, and it is hereby denied." (Emphasis added) The language underscored in Section 233 and in the Watson case, supra, is the language most pertinent to your first question. There has been no significant change in Section 233 as amended to cause the word "jurisdiction" to have- a meaning other than that meaning applied in the Watson case. We must presume that the Legislature was cognizant of the Watson case when it amended Section 233 in 1965. Clearly the "jurisdiction" as referred to in Section 233 covers the entire state. It is, therefore, the opinion of the Attorney General that the answer to your first question is that the chairman or secretary of the state party of the nominee is the proper party to file the necessary affidavit provided for in 26 O.S. 233 [26-233] (1967). In answer to your second question it is the opinion of the Attorney General that a regular party nominee must have changed his residence outside the state. It is clear from the language of the statute that the vacancy occurs at the moment the state election board makes a finding that a vacancy exists. In answer to your third question, for the same reasons as stated in the first question, it is the opinion of the Attorney General that the State Committee, rather than the County Committee, is the proper one to nominate a substitute candidate for state senate in the event of a vacancy. The office of the state senate has statewide jurisdiction; therefore, it is immaterial that the senatorial district lies within a single county. It seems clear that the Democratic State Central Committee, as referred to in the Watson case, is the counterpart to the State Committee of the Republican Party. Likewise, the State Executive Committees of the two parties are counterparts when this type of appointment is involved. It is, therefore, the opinion of the Attorney General that the answer to your fourth question is that the Republican State Executive Committee is the proper party to select a substitute nominee when the Republican State Committee is not in session. In answer to your fifth question, based upon the plain language of the statute, it is the opinion of the Attorney General that when the affidavit is filed in accordance with Section 233, other than by nominee, the nomination of a substitute nominee must occur subsequent to the finding of a vacancy by the State Election Board. In view of the above answers we find it unnecessary to answer your sixth question. (G. T. Blankenship)